Wilcox *v.* Randall.

---

SAME TERM. *Before the same Justices.*

### WILCOX *vs.* RANDALL.

The word *exchange,* as used in the section of the revised statutes which provides that if a husband seised of an estate of inheritance in lands exchange them for other lands, his widow shall not have dower of both, but shall make her election, within a year, &c. is to receive the same interpretation which is applied to it when used at common law, in reference to that species of conveyance.

In order to deprive the wife of her dower, therefore, in lands conveyed by her husband, or to put her to an election, under the provision of the statute, there must be a mutual grant of equal interests in the respective parcels of land ; the one in consideration of the other.

A transfer of a mere equitable interest in 75 acres of land, derived under a lease in perpetuity, for 11 acres of land and $700 in other property, will not constitute a legal exchange.

When conveyances will not be *presumed,* although there has been a possession for more than thirty years.

THIS action was brought by the plaintiff, Polly Wilcox, widow of Ethan Wilcox, deceased, to recover her dower in eleven acres of land, of which her husband was seised during the coverture. Wilcox conveyed the premises to John Budlong in 1811 ; the plaintiff not joining in the conveyance. The an-

Wilcox v. Randall.

swer denied the plaintiff's right, and set up by way of defence that on the 13th of April, 1811, Budlong, under whom the defendant claimed, was seised of a certain lot of 75 acres of land situate in Paris, Oneida county, and known as the mill lot; that on that day an agreement was made between him and Wilcox to exchange the 75 acre lot for the 11 acre lot in which dower was claimed; that in pursuance of that agreement Wilcox conveyed the 11 acres to Budlong, and that afterwards Budlong, or his representatives, conveyed the 75 acres to Wilcox; that Wilcox went into possession thereof, and occupied the same until his death; that on such exchange the 11 acres was valued at $400. The defendant also stated that Wilcox died more than a year before the commencement of this suit, and that, by the failure of the plaintiff to commence a suit to recover her dower within a year after her husband's death, she had elected to take her dower in the 75 acres received in exchange from Budlong, and that she was not entitled to dower in the 11 acres. The plaintiff, by a replication, took issue on the new matter set up in the answer. She denied all knowledge of what lands were bought by Budlong of Wilcox, but admitted that Wilcox bought of Budlong certain premises for a stipulated price, and that he sold to Budlong the lands mentioned in the complaint, as a part of the purchase price of the lands bought of him. That the lands so bought were sold in the lifetime of Wilcox, on a mortgage given by him to raise the purchase money, and the plaintiff never was entitled to dower therein; and the plaintiff insisted on her right of dower in the 11 acres. The case was tried at the Oneida circuit in August, 1849, before H. Gray, justice. The plaintiff proved her husband seised in fee of the 11 acres, during the marriage. It was proved that the 11 acres of land were exchanged by Wilcox with Budlong for the 75 acres owned by the latter, Wilcox, at the same time turning out other property, consisting of watches, a rifle, a clock and bedding, to Budlong, and giving him his notes for from five to seven hundred dollars, as "boot money." A witness testified that he had a conversation with Wilcox in 1843, while he was in possession of the mill property. The defendant offered to give evidence of

Wilcox v. Randall.

the declarations of Wilcox, made on that occasion, to show an exchange between him and Budlong. The plaintiff's counsel objected to this testimony, but the judge admitted the evidence, and the plaintiff excepted. It appeared in evidence that the only title which Budlong had, to the 75 acres, at the time of the exchange, was a lease in perpetuity originally given by Joseph Walker to John Rhoads, reserving an annual rent of $23, with a clause of re-entry; which lease had been assigned, (or attempted to be assigned,) to Budlong, by an instrument without a seal, executed by Rhoads on the 15th of January, 1797. This lease was assigned to Wilcox, the husband of the plaintiff, on the 8th of April, 1825, by the executors of John Budlong, deceased. It was proved that at the time of the execution of that assignment Wilcox paid the executors $147, being the balance remaining due for the purchase money of the 75 acres. The defendant produced, on notice, the following written instrument, viz : An indenture purporting to be made the 13th day of April, 1811, between John Budlong of the one part, and Ethan Wilcox and Alfred Wilcox of the other part; whereby in consideration of the sum of $1200, and of the yearly rents and covenants and conditions thereinafter contained, Budlong conveyed to the said Ethan Wilcox and Alfred Wilcox, their heirs and assigns forever, 76 acres of land, more or less, (being the mill property hereinbefore mentioned,) in fee simple, reserving a perpetual rent of $11,40 per annum, payable to Joseph Walker, the original grantor of the land, with covenants for the payment of the said rent, and a proviso or condition in favor of said Walker, and his heirs and assigns, authorizing them to re-enter for the non-payment of rent after thirty days from the time it became due. This indenture purported to have been signed and sealed by John Budlong and witnessed by William Risley and David Budlong ; a part of the seal and part of the signature of John Budlong, were torn from the instrument. This paper was found in John Budlong's desk, with his other papers, at the time of his death ; when found, it was in the same condition as when produced. The plaintiff offered to read this instrument in evidence, which was objected to by the defendant's

counsel. The court overruled the objection, and the paper was read in evidence. The plaintiff called upon the defendant's counsel to produce any conveyance from Ethan Wilcox, under which the defendant derived title to the 11 acres in which dower was claimed. No conveyance was produced. By consent of the counsel for the respective parties the questions of fact as well as of law were submitted to the court, and the judge decided and found that Ethan Wilcox took an estate in said 75 acres of land which entitled the plaintiff to dower therein : to which the plaintiff excepted. That the plaintiff, not having elected to take dower in the land mentioned in the complaint, by the commencement of proceedings to recover her dower therein within one year after the death of her husband, said Ethan Wilcox, she was barred from recovering dower herein, and that the defendant was entitled to a verdict : to which the plaintiff excepted. And thereupon, under the decision and direction of the judge, the jury found a verdict for the defendant ; and the plaintiff, upon a case, moved for a new trial.

*T. H. Flandrau*, for the appellant. I. The declarations of Ethan Wilcox were improperly admitted in evidence. (1 *Cowen & Hill's Notes*, 656, *and cases cited*. 3 *R. S.* 742, § 16.) (1.) The declarations of the husband can not be given in evidence to defeat the wife's claim to dower. (2.) Especially in this case, where the declarations offered in evidence, were made when the husband was not in possession of the property in which dower is claimed, and long after his possession had ceased. (3.) An exchange in lands, to operate as a bar of dower, must be a valid conveyance at the time it is made, and since the statute of frauds, must be in writing. II. Neither the defendant's answer, nor the proofs, set up a state of facts constituting an exchange of lands, under 1 *R. S.* 740, § 3 ; or which would put the plaintiff to any election under the provisions of that statute. (1.) The alledged exchange set up in the answer, took place April 13, 1811, at which time Budlong had no estate of freehold in the 75 acre lot. (*Jackson* v. *Wendell*, 12 *John*. 355. *Jackson* v. *Wood*, *Id*. 73.) (2.) Budlong made no conveyance du-

Wilcox *v.* Randall.

ring his lifetime; and nothing passed by the deed of the executors, dated 8th April, 1825 ; the estate of Budlong, if any, having at his death passed to his heirs at law. III. To constitute an exchange of lands, the following requisites are indispensable, which are wanting in this case. (1.) The estate must be equal. (2.) The word "exchange" must be used ; and " is so individually requisite and appropriated by law to this case, that it can not be supplied by any other word, or expressed by any circumlocution." (3 *Bl. Com.* 323. 1 *Hil. Ab.* 76. 2 *Id.* 310, 311. *Cass* v. *Thompson,* 1 *N. H. Rep.* 65. *Co. Lit.* 57. *Lit.* 62.) IV. The proof is clear that no exchange ever took place. The assignment by the executor is the only conveyance Wilcox ever had, and Budlong never had any.

*F. Kernan,* for the respondent. I. Ethan Wilcox exchanged the lands mentioned in the complaint for the 75 acres of land mentioned in the answer. This is substantially admitted by the pleadings; it is abundantly established by the evidence; and having been passed upon as a question of fact, can not be reviewed here. By virtue of the exchange, Wilcox became seised of an estate of inheritance in and to the mill and 75 acres of land, and the plaintiff entitled to dower therein. (1 *R. S.* 740, § 1. 4 *Kent,* 4, 124. 2 *Black.* 104, 109. 1 *Cruise,* 17, § 49. *Id.* 151, § 19. *Id.* 149, § 8.) II. The declarations of Ethan Wilcox, while in possession of the 75 acres, were competent. It was admitted by the pleadings, and proved, that Wilcox and Budlong exchanged possession of the two parcels of land. The declarations of Wilcox were competent to characterize that possession, and to show that Wilcox, pursuant to the exchange, possessed the 75 acres as alledged in the answer. (4 *John.* 230. 3 *Id.* 499. 14 *Wend.* 233. 1 *Cowen & Hill's Notes,* 596, 7.) III. But even if the judge erred in admitting these declarations, this court will not reverse the judgment. The court have the whole of the evidence before them, on a case. Irrespective of these declarations, the answer of the defendant is fully established ; there can not be a doubt but that Wilcox exchanged the 11 for the 75 acres, and took and held the latter by virtue

Wilcox v. Randall.

of the title derived by such exchange. It was not necessary to produce the deeds executed on the exchange. After a possession by the respective parties for more than thirty years, deeds are presumed. Indeed the reply does not deny the material allegations of the answer, but sets up new matter in avoidance, and denies the conclusions of law insisted upon by the answer. In such a case, the court will not reverse the judgment even if these declarations were improperly admitted. (4 *Wend.* 458. 12 *Id.* 41, 44. 1 *Hill*, 118.) IV. Wilcox having exchanged the lands mentioned in the complaint for other lands, his widow was not entitled to dower in both; and not having elected to take dower in the land in the complaint mentioned, by bringing her suit therefor within one year after his death, she is barred. (1 *R. S.* 740, § 3. 3 *Id.* 596. 4 *Kent*, 59. 1 *Cruise*, 148, § 3.)

*By the Court*, GRIDLEY, J. This is a suit for dower, and the defence is that in 1811 the lands in which dower is claimed were *exchanged* by the husband of the plaintiff, with one Budlong under whom the defendant holds, for another farm of 75 acres, and that the defendant did not within one year after the death of her husband make her election to take her dower in the lands given in exchange. It is conceded that she made no election within the year; and it follows, therefore, that if these lands were *exchanged*, within the legal meaning of the term, the plaintiff can not recover. (1 *R. S.* 740, § 3. *Rev. note to this section*, 3 *Id.* 596. 4 *Kent*, 59.)

But the plaintiff denies that an exchange, in the legal sense of the term, took place. An exchange is defined by Blackstone to be " a mutual grant of equal interests, the one in consideration of the other." " The estates exchanged," he adds, " must be equal in quantity; not of *value*, for that is immaterial, but of *interest ;* as fee simple for fee simple, a lease for twenty years for a lease for twenty years, and the like." (2 *Bl. Com.* 323, *and cases cited in the notes.*) The same rule is laid down in 1 *Hil. Abr.* 70, § 2; *Id.* 310, 311. It was suggested on the argument, that the word as used in our statute ought to receive a more

liberal interpretation than that derived from the common law definition.   But a reference to the revisers' note before cited shows that it was the object of the framers of the statute to enact the common law rule which is found in 1 *Cruise*, 148, § 3, and in 1 *Inst*. 31 *b*.   The common law rule must have been adopted with reference to the common law definition of this species of conveyance.   We must therefore inquire whether the lands in question were conveyed by the husband of the plaintiff, and the 75 acres were conveyed to him, by that species of conveyance called an exchange.

(1.) There was no exchange of equal interests.   It was not even an exchange of land for land.   If the rule is to prevail, where half of the consideration, as here, consists of money or personal property, the other half being land, it may also prevail when a thousand acres of land are exchanged for a single acre of land and nine thousand dollars in money.   This was not therefore " a mutual grant of equal interests, the *one* in consideration of the *other*."

(2.) No *legal* title has ever been conveyed, of the 75 acres. The assignment of John Rhoades to John Budlong of a lease in perpetuity, subject to the condition of paying a stipulated rent, *without seal*, conveyed no legal title.   The cases of *Jackson* v. *Wendell*, (12 *John*. 355,) and *Jackson* v. *Wood*, (*Id*. 73,) are conclusive on this point.   Again; the title to the premises, if the assignment had conveyed it to John Budlong, descended to his heirs, and could not be conveyed by his executors unless under a legal power contained in the will of John Budlong, of which there is no proof.   Nothing therefore but an equitable interest—a mere right to compel a legal conveyance—ever passed to Wilcox.   A transfer of a mere equitable interest in 75 acres of land, for 11 acres and $700 in other property, cannot satisfy the requirements necessary to constitute a legal exchange. Again; it may be added that neither the assignment of the executors of John Budlong to Wilcox, nor the undelivered and cancelled deed of John Budlong, bearing date the 18th of April, 1811, purports to have been made upon an exchange of lands.

A suggestion was made on the argument, that a conveyance

would be presumed after the great lapse of time that has intervened since the exchange of possessions. To this argument there are two answers. (1.) A MUTUAL GRANT at the time, even if presumed, would not be compatible with the evidence, which shows *that either* $500 or $700 in money or property was given, over and above the 11 acres of land. (2.) No such presumption could be entertained till the purchase price was paid, which did not take place, as David Budlong testifies, till April, 1825. Again; John Budlong was then dead, and David was his son and one of his heirs, and he has no knowledge of any other conveyance to Wilcox except the assignment executed by himself and his co-executors. To presume a conveyance, other than this assignment, in the face of this evidence, would be stretching the doctrine of presumptions to a dangerous extent. It is not a case which authorizes a presumption of *two legal conveyances.* Two defective conveyances, one to John Budlong, and one to Wilcox, have been *proved;* and there is no reason to believe that any others were ever executed.

There must be a new trial; costs to abide the event.

————•◦•————

SAME TERM.    *Before the same Justices.*