Argued December 27, 1897; decided February 7, 1898.

WINDSOR *v.* COLLINSON.

[ 52 Pac. 26.]

1. WHAT CONSTITUTES AN EXCHANGE OF PROPERTY.—It is essential to a common law exchange of property that the estates be equal in interest, that they be given the one for the other, that there be no other consideration moving from either party, and that the word "exchange" be used.

2. PLEADING — EFFECT OF ADMISSIONS IN ANSWER.— The failure of an answer to deny the allegations of a complaint, that plaintiff exchanged his land for the defendant's, is not an admission that the transaction was a technical common-law exchange, with the implied conditions and warranties incident to such an exchange, where the facts alleged in the complaint show that it was not such an exchange.

From Polk:   GEO. H. BURNETT, Judge.

Suit by Benjamin Windsor against Thomas Collinson and Israel Booth to rescind a contract and reobtain certain real property.   There was a decree for defendant which caused this appeal.

AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. Geo. G. Bingham* and *Wm. H. Holmes.*

For respondents there was a brief over the names of *John A. Carson* and *Tilmon Ford,* with an oral argument by *Mr. Carson.*

MR. JUSTICE BEAN delivered the opinion.

This is a suit to cancel and set aside a conveyance from the plaintiff to the defendants of certain real property in Polk County, and comes here on an appeal from a decree dismissing the complaint.   The material facts are that some time during the life of the donation law one George K. Gay and his then wife acquired a title thereunder to 640 acres of land in Polk County.   Soon thereafter Mrs. Gay died intestate, leaving her husband and seven children surviving her, among the number being Henry Gay, and Louisa Gay, and an elder daughter, who intermarried

with one Simpkins. On November 12, 1882, one L. C. Forest, who had acquired by purchase the interests of all the heirs in Mrs. Gay's half of the donation land claim, except that of Henry and Louisa, and the curtesy of George K. Gay, entered into an agreement with the last-named parties for an amicable partition of the land, whereby Forest was to have 220 acres and the other parties the remaining 100 acres thereof. The conveyances necessary to carry out this agreement were duly executed, but in the one from Forest to Henry and Louisa Gay the name of Mary A. Gay, the then wife of George K. Gay, was inserted as one of the grantees. This deed was duly recorded, and the defendants subsequently purchased, in good faith and for a valuable consideration, the supposed interest of Mrs. Gay in the property, and received a conveyance therefor, and subsequently conveyed it to the plaintiff, in exchange for a tract of 32 acres, paying the sum of $25 in addition. Shortly thereafter the plaintiff and Simpkins, who was in possession of the land at the time it was conveyed by the defendants to the plaintiff, became involved in litigation over the validity of the deed from Forest to Mrs. Gay, in which it was finally adjudged and decreed that such deed had been surreptitiously altered and changed after its execution, and was therefore fraudulent and void, and conveyed no title whatever: *Simpkins* v. *Windsor*, 21 Or. 382 (28 Pac. 72). He thereupon brought this suit to rescind the contract between himself and the defendants, to cancel his conveyance to them, and recover back the land described therein. In his complaint he alleges, in effect, that in November, 1886, he was the

owner of a certain tract of land in Polk County, containing about 30 acres, and that at the same time the defendants represented to him that they were the owners of an undivided one third of five sevenths of the 100-acre tract conveyed by Forest to Henry and Louisa Gay, and that he and defendants "entered into a contract for the exchange of the interests of each of the parties in such lands, it being agreed that the respective interests were of equal value, except that the defendants should pay $25 for the exchange in addition to their own land on account of some water rights on the west end of the tract deeded to them"; that this agreement was consummated, but the title of the land conveyed by defendants to the plaintiff had failed, and that the defendants did not own any interest therein at the time of such conveyance, "which fact they well knew, but they fraudulently concealed the same from the plaintiff"; that thereafter the plaintiff rescinded the contract, and demanded the reconveyance from the defendants of the land conveyed to them by him, but they refused to accede to his request.

The answer denies the material allegations of the complaint, except the fact of the conveyances from one to the other, and affirmatively avers that the deed from defendants to the plaintiff was intended to and does convey only their right, title and interest in and to the premises described therein, and that they never intended or agreed to convey to plaintiff any other or greater interest; that since the conveyance referred to in the complaint the defendants had made valuable and permanent improvements upon the lands

received from plaintiff, rendering it impossible to rescind the contract; and that the plaintiff was in full and complete possession of every fact pertaining to the title, and the premises conveyed to him, known to the defendants at the time of such conveyance.

The testimony is quite voluminous, but there is really little conflict upon any of the material questions in the case. The contention for the plaintiff, as disclosed by the brief and argument of his counsel, is (1) that the transaction between him and the defendants which is the subject of this litigation was a common-law exchange of lands, and that he therefore has a right to rescind on failure of title to the premises conveyed to him by the defendants; and (2) that defendants knew, at the time of such exchange, that they had no title to the land which they attempted to convey, but fraudulently concealed the same from him. Of these questions in their order:

1. An exchange is defined to be a mutual grant of equal interests, or rather estates of the like denomination, in lands and tenements, the one in consideration of the other. The word "exchange" in this connection is a technical term, used to denote a particular method of transferring property, with certain conditions and warranty in law incident and annexed to it· But it is absolutely essential to this mode of conveyance that the estates exchanged be equal in interests, and be given the one for the other, and that the transfer be made by the use of the word "exchange." No other word is regarded as equivalent thereto, nor does an averment that it was an exchange avail. Shepp. Touch. 290; 2 Blackstone's Commentaries *223;

Jacob's Law Dictionary, "Exchange." In Shepp. Touch. 294, it is said: "The word 'eschange' or 'exchange' must be had and used between the parties in the making of the exchange; as, if I grant to you Whiteacre, to have and to hold to you and your heirs in exchange for Blackacre, and in consideration hereof you grant to me and my heirs Blackacre in exchange for Whiteacre; for this word is so individually requisite, as it cannot be supplied by any other word; neither will any averment that it was in exchange help in this case. And, therefore, if A. by deed intended to give to B. an acre of land in fee simple, or for life, for the acre of B., and by the same deed B· doth give to A. another acre of land in the same manner, this cannot inure as an exchange; and, therefore, if there was no livery of seisin, so as it may take effect by way of grant, it is utterly void." It is clear from these definitions of an "exchange" that the transaction between the plaintiff and defendants possessed none of the essential requisites of such a transfer. It was not an exchange of land for land, for an additional consideration of $25 was paid by the defendants to the plaintiff, and this was sufficient to render it inoperative as a common-law exchange: *Wilcox* v. *Randall,* 7 Barb. 633; *Long* v. *Fuller,* 21 Wis. 122. And, besides, the conveyances were by separate instruments, in the ordinary form, and the word "exchange" is not used in either of them. This is likewise fatal to plaintiff's contention: *Cass* v. *Thompson,* 1 N. H. 65.

2. It is contended, however, that the pleadings admit the transaction to have been an exchange, because

the complaint alleges that plaintiff exchanged his land for the defendants' and $25 in money, and this allegation is not denied. But the admission only goes to the facts alleged, and not that the transaction was a technical common-law exchange, with all the incidents of such a transfer. No such claim was made in the complaint, and the facts alleged negative any such inference. It is clear, therefore, that plaintiff is not entitled to relief on the ground that the transaction between him and the defendants was a technical common-law exchange.

Nor is there any merit in the contention that the defendants knew they had no title to the property conveyed by them to the plaintiff, and fradulently concealed such knowledge from the defendants. It is true the witness Childers testified that some time during the taking of the testimony in the litigation between Windsor and Simpkins concerning the land in question, in a conversation between the respondents, the witness, and one McLench, concerning the alleged title of Mrs. Gay, the defendant Booth said "he never did believe the old lady had any right," and that he "always knew there would be trouble if any one bought her right out," and if "she had no right to deed to us we had none to deed to Ben Windsor"; and that "Ben is always getting into trouble. If we didn't get him into that, he would have got into something else. We have got the lands we want, and are out of it, and don't care who beats." But these alleged statements are denied by both respondents; and the witness McLench, who was present at the time, gives an entirely different version of the matter.

It is unnecessary to further extend this opinion, however, by quoting from the testimony. It is sufficient to say that both parties, relying upon the record, supposed that Mrs. Gay's title was good, and acted accordingly, although they knew, and plaintiff was informed before his purchase from the defendants, that there was some question as to its validity, and that there would probably be litigation over it. He not only took counsel in regard to the matter, but as administrator of the estate of Frank Jarvis, husband of Louisa Gay, had become familiar with the claim of Mary A. Gay, and knew as much about her rights as either of the defendants, if not more, and in making the alleged exchange relied upon his own information and knowledge concerning the title, and not upon any statement or representation of the defendants. Neither party knew at the time nor suspected that the claim would be made that the deed to Mrs. Gay was a forgery and void, and they regarded the discussion among the heirs as to whether it conveyed a title in fee, or only the courtesy of George K. Gay, as settled by the record. There is, therefore, no ground for the interposition of a court of equity on account of fraud. Decree must be affirmed, and it is so ordered.

                                        AFFIRMED.