### TEXAS LOAN AGENCY ET AL. v. MARY MILLER ET AL.

#### No. 994. Decided April 1, 1901.

**1. Agency—Power of Attorney—Conveyance.**

A power of attorney authorizing the agent "to buy and sell lands, goods, and chattels" and "transact all business necessary in the transaction of my affairs" and "to sign my name as my attorney," was sufficient to support a conveyance of a tract of the grantor's land, in her name, by such agent. (Pp. 465-468.)

**2. Same—Power to Buy and Sell.**

In the absence of circumstances supporting such a construction the power given the agent to sell his principal's land, though expressed as a power "to buy and sell," is not to be limited to lands to be first bought by him. See facts held to warrant, not such restricted construction, but the contrary one. (Pp. 466, 467.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Navarro County.

The suit was brought by Mary Miller and others against the Texas Loan Agency and others, in trespass to try title. Judgment was for defendants and plaintiffs appealed on an agreed case. The judgment was affirmed as to all except Mary Miller, and as to her was reversed and rendered in her favor, whereupon appellees procured writ of error.

*McKee & Autrey* and *Frost, Neblett & Blanding,* for plaintiffs in error.—The power itself is sufficient to authorize the conveyance in this case, and the limited construction sought to be applied by appellants is inequitable and is not the land law of Texas. Garrison v. Coffey, 5 S. W. Rep., 638; Gouldy v. Metcalf, 75 Texas, 455; Williams v. Livingston, 9 N. W. Rep., 31.

The intent of the parties is the ultimate object at which all rules of construction aim, and to this end the "circumstances under which the power was executed" are material and important. Gouldy v. Metcalf, 75 Texas, 458; Reese v. Medlock, 27 Texas, 123; Frink v. Roe, 70 Cal., 296; Gee v. Bolton, 17 Wis., 624; Garrison v. Coffey, 5 S. W. Rep., 638.

*Ballew & Ballew,* for defendants in error.—The trial court erred in rendering judgment for defendant, and in holding that the power of attorney from Jane Beauchamp to W. T. Charles authorized the conveyance of the Rufus Charles one-third league, and in holding that the deed to James W. Scott vested title in Scott to the Rufus Charles one-third league in Navarro County, Texas, because said power of attorney did not authorize the conveyance of any land owned by Jane Beauchamp, but only authorized W. T. Charles to buy land and sell the same. Greve v. Coffin, 14 Minn., 345; Stafford v. Lick, 13 Cal., 240; Allis v. Goldsmith, 22 Minn., 123; Mills v. Carnly, 1 Bosw., 159 (cited in Greve v. Coffin); Smith v. Sublett, 28 Texas, 163; Gouldy v. Metcalf, 75 Texas, 455; 1 Wait's Act. and Def., pp. 224-226; Reese v. Medlock, 27 Texas, 123; Berry v. Harnage, 39 Texas, 639; Skaggs v. Murchison, 63 Texas, 353; Hazlett v. Hardwood, 16 S. W. Rep., 310; Harrington v. Moore, 21 Texas, 549; Wynne v. Parke, 30 S. W. Rep., 52; Smith v. Powell, 23 S. W. Rep., 1109; Frost v. Cattle Co., 17 S. W. Rep., 52; Collins v. Durward, 23 S. W. Rep., 561; 1 Dev. on Deeds, 358; Bank v. Aymar, 3 Hill, 262; 6 Cush., 117; Gilbert v. How, 45 Minn., 121; Rossiter v. Rossiter, 8 Wend. (N. Y.), 494; Brantley v. Insurance Co., 53 Ala., 554; Bliss v. Clark, 16 Gray (Mass.), 60; Rice v. Tavernier, 8 Minn., 248; Berkey v. Judd, 22 Minn., 287; Dodge v. Hopkins, 14 Wis., 630; Johnson v. Wright, 6 Cal., 373; Holliday v. Daily, 19 Wall., 606; Roundtree v. Denson, 59 Wis., 522; Randall v. Duff, 79 Cal., 115; 18 Am. and Eng. Enc. of Law, 873, note 2.

WILLIAMS, ASSOCIATE JUSTICE.—The defendants in error, who were plaintiffs in the District Court, claimed the land in controversy as heirs of Jane Beauchamp, and plaintiffs in error, defendants below, claimed it through mesne conveyances under a deed executed by William T. Charles as attorney in fact for Jane Beauchamp. The decisive question in the case is whether or not the power under which Charles acted authorized the conveyance made by him. The power of attorney was executed January 3, 1847, and the conveyance under it was made by the attorney in fact December 1, 1850. The only facts shown by the evidence as existing when the power was executed were that Jane Beauchamp was a widow who could neither read nor write, living in Fayette County near her oldest son, William T. Charles, the donee of the power, and that she owned horses, cattle, and lands, the latter situated in different counties, among which was that in controversy inherited by her from a deceased son.

The power of attorney thus stated the authority given: "For me and in my name to buy and sell lands, goods, and chattels, to receipt for me and in my name, and to transact all business necessary in the transaction of my affairs. And I, Jane Beauchamp, do hereby empower the said Charles as my attorney in fact to sign my name as my attorney, and I do further bind and confirm all the acts of said Charles as may

be necessary and legal as my attorney in fact, hereby acknowledging every act or acts of said Charles as my attorney in fact as binding on me as if the same were done by me personally, hereby binding my heirs, executors, administrators, or assigns to regard the act or acts of said Charles as my attorney in fact as binding as if executed by me, Jane Beauchamp, in my proper person." The land in controversy was sold and conveyed by the attorney in fact to James W. Scott for a money consideration, and his deed was recorded in 1851; and the mesne conveyances down to defendants were made at various times from 1854 until 1874 and recorded in due time. There have been actual possession of and improvements and payment of taxes upon the land under this title since 1868. Jane Beauchamp lived until 1866 or 1867 and William T. Charles until 1868, and the latter acted as the general agent of his mother, and, besides the sale of the land in question, the record states that "he appropriated all of the Jane Beauchamp estates in his lifetime." There is no evidence that Jane Beauchamp ever asserted claim to the land after the sale of it and none that she received the purchase money, unless the fact may be inferred from the circumstances stated.

The District Court held that the power of attorney was sufficient to authorize the sale and conveyance of the land and gave judgment for defendants, but the Court of Civil Appeals reversed this judgment and adjudged to one of the plaintiffs, who was not barred, the interest inherited by her from her ancestors. We think this was error.

The power of attorney expressly empowered the agent to sell some land, meaning, of course, land belonging to the constituent, and when we ascertain the land the sale of which was authorized, the question at issue is solved. As the power is expressed, "to buy and sell lands," it is urged that a strict construction would make it mean simply to buy lands and sell them. The power with reference to goods and chattels is precisely the same as that with reference to lands, and under the construction suggested, the agent would have no power of sale of either except such as he had first bought. This would necessarily give to the power the effect of creating an agency simply for the purpose of buying and selling property and of clothing the agent with unlimited power of that kind. If there were anything in the instrument or in the circumstances existing at the time of its execution to show that the parties contemplated entering upon such a business, the construction contended for might be admissible, not because it would make the authority narrower, but because it would effectuate the intent of the maker of the instrument. This theory of interpretation would give a character to the power which would defeat the sale in question, but we can not see that the authority thus established would be of a kind inferior to the other. But the facts appearing lead to the other construction. No money is shown to have been furnished to the agent or to have been on hand, and the affirmative statement of the property owned by Mrs. Beauchamp carries with it the implication that there

was none. The things with which the agent was to deal were lands, goods, and chattels. No power being given to buy on credit and no money being furnished with which to pay for them, the conclusion seems inevitable that the power was given with reference to those on hand and was to be executed upon them. While it is often laid down that such powers are to be strictly construed and not extended beyond their plain meaning or necessary implication, it is also true that the real intention of the parties is to be ascertained, and when that is discovered from the terms of the writing and the circumstances properly admissible in evidence, there is no rule of construction that will defeat it. The most that can be said in favor of the position of the defendant in error is that the language used is consistent with it; but it is consistent also with the construction that it meant to authorize the agent to sell any property owned by the constituent and to buy other property, and the true meaning is to be found by ascertaining from the circumstances surrounding the parties what property they had in mind. The facts stated, with what is generally known of the condition of the country at that time, enable us to do this. The constituent was an illiterate widow and owned an estate consisting of lands and chattels scattered over a large territory with scant means of travel and communication. If her situation was like that generally existing among the people of Texas at that period, she was without any considerable amount of money or means of subsistence, except such as might be derived from the prudent management and disposition of her property, and for this, her limited capacity and the natural difficulties surrounding unfitted her. It was but natural that she should employ the services of her son and empower him, in the language of the instrument, "to transact all business necessary in the transaction of my affairs," and in so doing, to sell either the lands or chattels of the management of which he was to relieve her. This view of the purpose of the power is thoroughly consistent with the situation and apparent needs of the maker of it and her subsequent conduct, while the construction that it was intended only to authorize a business of buying and selling is out of harmony with both. There is nothing to show that either party ever contemplated or engaged in such a business, while, on the other hand, their true purpose, as we have indicated it, is revealed by their surroundings at the time of the making of the instrument and their conduct afterwards. If it be assumed that Mrs. Beauchamp never learned of the sale of the land in controversy, she must necessarily have known of the fact that her agent was disposing of the personal property as to which his power was exactly the same. In the absence of anything to the contrary, it is fair to assume that the appropriation of it by him, spoken of, was done under the power of attorney.

We have made a careful examination of all of the authorities relied on to support the judgment, and find that all of them are distinguishable from this by the circumstances referred to. In all of them the

intention of the parties expressed in the instrument, either so plainly as to admit of no explanation, or as inferred from the language where no extraneous facts appeared to aid it, or gathered from the language with the aid of surrounding circumstances, was made to prevail. In those in which the writing under consideration was susceptible of two constructions, and in which that which narrowed the power was adopted, the surrounding circumstances did not show that the purpose of the constituent was to give the broader power. Here the facts show the purpose of the parties to have been to give a power different from but not broader than that for which defendants in error contend. In cases where ambiguity exists, courts must necessarily look to the extrinsic circumstances to remove it, and to find the real intention consistently with the language used, and to this all rules of construction are subordinate.

The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*