PRICHARD v. FOSTER. (No. 664.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 14, 1914.)

1. LIMITATION OF ACTIONS (§ 127*)—AMENDMENT OF PLEADINGS—"EXPRESS CONTRACT" —"IMPLIED CONTRACT."

Where the original petition in a broker's action for commissions alleged an express listing contract of agency to sell or exchange defendant's lands, exceptions were properly sustained to paragraphs of an amended petition filed after limitations had run against a new action alleging that defendant led plaintiff to believe that he was employing plaintiff to procure a person with whom he could make a sale, trade, or exchange, that plaintiff while negotiating a sale or exchange believed that defendant desired him to procure such person, and that defendant knew of such belief and of such negotiations, whether such paragraphs sought a recovery upon a quantum meruit or upon an express meeting of minds based upon a course of conduct, since an "express contract" consists of words written or spoken expressing an actual agreement of the parties, while an "implied contract" is one evidenced by conduct manifesting an intention of agreement.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*

For other definitions, see Words and Phrases, First and Second Series, Express Contract; Implied Contract.]

2. BROKERS (§ 57*)—COMPENSATION—NEGOTIATION OF CONTRACT DIFFERENT FROM THAT AUTHORIZED.

Defendant listed land with a broker for sale at a specified price, payable one-fourth in cash and the balance in ten installments. He subsequently agreed with H. to transfer the land at an agreed valuation on the transfer of a business house and lot at an agreed valuation and a stock of goods, the party whose property was less in value to pay the difference, and did pay partly in money and partly in commodities, the difference in H.'s favor. *Held* that, conceding that the broker was the procuring cause of this deal, he could not recover in an action based upon the listing contract, where there was no pleading authorizing a recovery on the ground

that defendant took advantage of the deal brought about by the broker, since the contract between defendant and H., if a sale rather than an exchange, was nevertheless a different contract than the one authorized by the listing agreement.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

Appeal from Randall County Court; C. E. Coss, Judge.

Action by J. L. Prichard against Joe Foster. From a judgment for defendant, plaintiff appeals. Affirmed.

Reeder & Dooley, of Amarillo, for appellant. A. S. Rollins, of Amarillo, for appellee.

HENDRICKS, J. The appellant, Prichard, sued Foster, the appellee, in the county court of Randall county, for the sum of $640, alleged to be due him by appellee as commissions earned by him in the sale of 320 acres of land.

[1] Appellant's first assignment of error is to the effect that the trial court erred in sustaining defendant's special exceptions leveled against paragraphs 8 and 9 in his fifth amended original petition. We quote from the appellant's statement under this assignment as explanatory of the nature of the case and of the issues which appellant insists are involved:

"Appellant, in his original petition, sets up a contract with appellee to pay appellant five per cent. commission for procuring a person with whom appellee could make a deal to sell or exchange his lands at $40 per acre. This same contract is set up and relied upon * * * for recovery in his first, second, third, fourth, and fifth amended petitions. In paragraph 8 of the fifth amended petition, appellant alleges the specific facts which constitute the contract he is declaring upon, to wit: That appellee led him to believe, and appellant did believe, and appellee knew appellant believed and understood, that appellee desired appellant and was employing appellant to procure for appellee a person or persons with whom appellee could make a deal to sell, trade, or exchange his land at the value of $40 per acre; that, while appellant was negotiating with Harder and showing him appellee's land and inducing him to purchase appellee's land, the appellant still believed appellee desired him to procure a person or persons with whom appellee could make a deal to sell, trade, or exchange his lands, and appellee knew all during said time that appellant so believed, and appellee knew that appellant was negotiating with said Harder during the time such negotiations were in progress, and appellee knew the nature of such negotiations, and never at any time made known to appellant that he (appellee) would not trade, or consummate the deal if same was made. That appellee accepted Harder's proposition made through appellant on the exact terms procured by appellant, and closed said deal on said terms and received the full value of $12,800 for his property, and thereby became liable and promised to pay appellant for his services 5 per cent. commission on $12,800."

Appellant says in his argument:

"By the fifth amended petition, appellant sets up the same contract in terms (meaning the express contract alleged in all the petitions), and in paragraph 8 alleges the facts showing how said contract got into existence. Not a new contract, nor a new cause of action, but the same contract in terms, stating some specific acts that created the contract."

And further argues:

"We submit that if Prichard in good faith believed that he was to receive 5 per cent. commission on either a sale or exchange at $40 per acre, and if Foster, by act or word, induced such belief, and with such knowledge permitted Prichard to go forward in the work and accepted the deal, as it is alleged he did do, no better, nor clearer, nor stronger contract could be made binding Foster to pay the 5 per cent. commission on either a sale or exchange of the land at $40 per acre."

Whether the trial court construed the allegations in paragraph 8, as based upon a quantum meruit, or as an express meeting of minds, based upon a course of conduct which instigated one man to work for another, with the other accepting the benefit, and knowing that the laborer believed he was acting under the other's desires, we think the trial court correctly applied the law.

We construe appellant's brief to admit that he pleaded an express contract of brokerage in the five petitions filed by him.

"Express contracts are where the terms of the agreement are openly uttered and avowed at the time of the making." Blackstone's Comm. vol. 2, p. 443; Elliott on Contracts, vol. 1, § 18.

Again, a contract is defined to be express, "when it consists of words written or spoken expressing an actual agreement of the parties"; and defined to be implied, "when it is evidenced by conduct manifesting an intention of agreement." Heffron v. Brown, 155 Ill. 322, 40 N. E. 584, quoting from old American & English Enc. of Law, vol. 3.

Excluding the subject of quasi or constructive contracts, imposed by law, contradistinguished from contracts in fact, the subject of express and implied contracts is presented by Clark on Contracts, p. 16, by the following statements and simple illustrations:

"Contracts implied from the conduct of the parties are implied as a matter of fact, and not as a matter of law. There is, in fact, an agreement between the parties, though it is shown by their very acts, and not by express words. If a man says to another in words, 'I will sell you this article for the market price,' and the latter, taking it, says in words, 'I accept your offer, and will pay the price,' there is an express contract, evidenced by express words. If a man sends another goods under such circumstances as to show that he expects payment, and the latter accepts * * * the goods, there is an implied contract that he will pay the market price, evidenced by the conduct of the parties in sending the goods on the one side, and in accepting them on the other. Sending the goods is an offer to sell them, and accepting them and using them is an acceptance of the offer." (Underscoring ours.)

Necessarily, there can be no implied contract in reference to the same subject-matter, upon the same terms, and to do or not to do the same thing, when there is an express contract; the latter would exclude the former.

---

Justice Brown said (Lumber Co. v. Water Co., 94 Tex. 464, 61 S. W. 709):

"If there was an express contract, there could be no implied contract arising out of the acts of performance of it; the one is destruction of the other. Two things which cannot coexist will not constitute one and the same thing."

See, also, Elliott on Contracts, vol. 2, § 1360; Encyc. of Law & Proc. vol. 9, p. 242, and citations; and Gammage v. Alexander, 14 Tex. 414. Our citations and expressions of elementary law are made for the reason that they really directly, or inferentially, pervade the whole case.

When appellant, in his five petitions, alleged an express "listing" contract of agency, to sell or exchange appellee's lands at the figures named upon the commission stated, we think it patent it is not the same ground of recovery pleaded in the eighth paragraph. The express contract to sell or exchange the land as a broker on specific commissions was made and closed by virtue of an actual agreement made at the time; it was not made by the course of conduct of appellee, and the mental impressions consequent by the conduct made upon appellant by the former, and, on account of which (appellee still knowing that appellant was relying upon such conduct) the latter negotiated the trade with Harder and Foster then accepting the benefits, thereby promised to pay the 5 per cent. commissions. The very statement of the pleadings refutes that "this is the same contract in terms declared upon in the original and each amended petition." Lumber Co. v. Water Co., 94 Tex. 464, 61 S. W. 707. Neither do we think the cases of Ross v. Moskowitz, 95 S. W. 86, and Jordon v. Dyer, 34 Vt. 104, 80 Am. Dec. 668, cited by appellant, have the slightest application to the real question involved. We acknowledge the rule, of course, that a new cause of action is not pleaded, where the amendment enlarged the facts, or the "relief" more specifically. Ross v. Kornrumpf, 64 Tex. 393. But the facts relied upon to sustain the grounds of recovery are necessarily different than the facts to sustain the grounds of the express contract, and place the action upon a distinct matter.

We commend the earnest effort of appellant to avoid the statute of limitation; but, whatever the character of contract pleaded by appellant in paragraph 8, the grounds of recovery are predicated upon a different basis and upon a different action than the express contract; and said paragraph 8 having been pleaded for the first time more than two years, and in reality exceeding four years, after the cause of action accrued, as exhibited in the pleadings, the action of the trial court in sustaining the exceptions raising the statute of limitations was correct. We also dispose of the further complaint, criticizing the action of the trial court in sustaining the same exceptions to paragraph 9 of said petition, for the same reasons.

[2] Appellant also assigns that:

"The judgment rendered in this cause against the plaintiff by the court is contrary to the law and not supported by the evidence, in this: (a) The proof shows and was uncontradicted that the defendant, Joe Foster, listed his 320 acres of land with the plaintiff, J. L. Prichard, for sale at $40 per acre and contracted and agreed to pay Prichard 5 per cent. commission on $40 per acre for procuring a purchaser with whom Foster could make a deal at $40 per acre. (b) The proof shows, and is uncontradicted, that J. L. Prichard did procure a purchaser with whom the defendant, Joe Foster, did make a sale of his said land at $40 per acre. (c) The proof shows, and is uncontradicted, that in the deal between Joe Foster, the defendant, and J. M. Harder, Foster's land was sold for $40 per acre, and that he (Foster) took in part payment therefor a house and lot in Canyon City, Tex., at the agreed value of $6,000, and took in payment for the remainder of the consideration of his land, goods, wares, and merchandise at the agreed value of cost and carriage, which constituted the transaction and sale in law. (d) The proof shows, and is uncontradicted, that J. L. Prichard procured J. M. Harder as the purchaser for defendant's land and was the procuring cause of said sale being made by defendant to said Harder and was therefore entitled to his commission."

The testimony of appellant and appellee is to the effect that the land was listed with appellant to sell at the price of $40 per acre, terms one-fourth cash, balance in ten installments, upon a 5 per cent. commission.

Conceding, argumentatively, that appellant was the procuring cause of the deal between Harder and Foster, he is unable to recover.

The trade between Harder and Foster comprehended the transfer of Foster's land to Harder at an agreed valuation of $12,800, in consideration of the transfer of a business house and lot in Canyon at an agreed valuation of $6,000, and of a stock of drugs, furniture, and fixtures, to be valued at invoice price, plus carriage. The party, whose property was under the value of the other's property received in said trade, was to pay the difference. When the drug store was invoiced, the difference was in favor of Harder to a considerable amount, which Foster paid— part in money and part in commodities. He says "the law determines from the facts of a transaction whether it is actually a sale or an exchange of property," and argues that when Harder agreed to take the land at an agreed valuation of $12,800, and when Foster agreed with the former to accept the house and lot at a certain price, and the drug store at cost and carriage, in consideration for the land, it constituted a sale, citing the following authorities: Rabb v. Johnson, 28 Ind. App. 665, 63 N. E. 580; Crowley v. Myers, 69 N. J. Law, 245, 55 Atl. 305; Kennerly v. Somerville, 68 Mo. App. 222; Grether v. McCormick, 79 Mo. App. 325; Driesback v. Rollins, 39 Kan. 268, 18 Pac. 187; Jordon v. Dyer, 34 Vt. 104, 80 Am. Dec. 668; Windsor v. Collinson et al., 32 Or. 297, 52 Pac. 26.

We are not denying the rule that a transfer of property, received at an agreed valua-

tion as an equivalent of money, constitutes a sale in a comprehensive sense; and to the authorities of appellant may be added the following: Fagan v. Hook, 134 Iowa, 381, 105 N. W. 155, 111 N. W. 982; Picard v. McCormick, 11 Mich. 86. The Court of Civil Appeals of the Second District, Justice Speer rendering the opinion, held that, where a defendant disposed of corporate stock for other property in payment of same at agreed valuations, this constituted a sale rather than an exchange, as affecting defendant's liability for a share of commissions to the other partner under a partnership agreement for the sale of the stock. Goodwin v. Mortsen, 128 S. W. 1182 (writ of error denied). The qualification seems to be that if the prices are fixed, not as the equivalent of cash, but merely as the basis of exchange, the transaction does not lose the character of an exchange. Recognized in Fagan v. Hook, supra; Rockefeller v. Merritt, 76 Fed. 909, 22 C. C. A. 608, 35 L. R. A. 633; Steere & Ballah v. Gingery, 21 S. D. 183, 110 N. W. 776. The question is interesting, resolving the able argument of appellant in this form: First, that he was employed to make a sale of the property at a certain price upon a fixed commission; second, that the transaction in this record constituted a sale; third, that, take the evidence as a whole, he was the procuring cause of the sale; fourth, that the language of appellee, when he listed the land with appellant, that he would not pay commissions upon an exchange, could not affect this transaction—(this was a sale); and, fifth, that when appellant initiated the particular deal (which constituted a sale) the appellee could not then annex a condition to it by notifying appellant during the pendency of the deal, that he (appellee) would not pay any commission on the particular deal—at a time when appellant had partially earned his commission on the contract to sell the property—it would require an agreement based upon a consideration to evade liability.

We are making the presentation as strong as we can. However, we are bound by what we conceive to be the logic of the Supreme Court, in the case of Colvin v. Blanchard, 101 Tex. 235, 106 S. W. 323. In that cause, it is true that the vendee was attempting to compel a specific performance of a contract alleged to have been made by the vendor; but it was a contract made by the vendor's agents, and the Supreme Court said:

"We must affirm the judgment of the court below in this case (denying the specific performance), because the agents, in making the sale, did not observe the limitation of their authority expressly stated in the letter which conferred that power."

In that case Blanchard had authorized the agents to sell the property for $19,000 upon "terms, $3,000 cash, balance long time, * * *" further agreeing to pay $1,000 commission. Gilliland and Harwood, the agents, sold the lots to Colvin for $19,000,

$3,000 cash, the balance distributed in deferred installments of five annual payments (the same in effect as contemplated in the contract here) ; the notes in that transaction to be payable "on or before." The Supreme Court, in deciding the case, waived a decision of the same upon the question whether the five years contracted for constituted the "balance on long time," and decided the cause upon the question of the identity of the contracts, that is, the listing contract made with the agents by Blanchard, and the one actually made by the agents with the vendee. The court said:

"* * * The words 'on or before' placed in each of the said notes gave the maker the privilege of paying them at any time he might choose, and they (the agents) did not comply with the terms of the authority because they were not long time notes, so far as Blanchard was concerned. * * * The purpose which prompted Blanchard to make 'long time notes' one of the terms of sale would be unimportant in this case, except that it serves to explain what was intended by him in the use of the phrase, 'long time notes.' * * * Whatever may have been his purpose, the terms of the authority are plain and unmistakable, and the failure to comply with them is equally plain."

The analogy, and the result that ensues, are as follows: The real listing contract, testified to by each, was to sell the land, part cash and part on ten years' time. If we were to construe the contract between Harder and Foster as a sale, still under the decision of the Supreme Court, following the logic of that opinion, it is clearly a different contract than the one proven as the listing contract, and exceeded the limitation of authority, in so far as this record shows, originally given to Prichard by Foster. In this case, it may be that the sale (if we were allowed to so call the transaction procured by Prichard), having been taken advantage of by Foster, would make the latter liable upon a proper pleading filed within time. However, the statute of limitations bars the action upon the character of sale actually made as distinguished from the listing contract actually proven, and with no pleading filed, and none which could be filed at this late date, to cover the matter.

We have weighed the testimony of appellee carefully as to what he intended to do, with reference to the payment of commissions, if Prichard had made, according to his view, a sale of the property; and that it was his contract to pay 5 per cent. commission if a sale had been made. The trial court could very easily have considered this language as attempted moral justification upon the part of Foster why he did not pay the commission demanded—that court had ample testimony to find that the real express contract between the landowner and agent was to pay a commission for a sale, part cash and part on time, and, after having found it (and we have to presume it), the transaction here was never met, or could be embraced, by any

pleading in the face of the statute of limitations.

This finding necessarily disposes of the remaining assignment. We are forced to affirm the judgment.

Affirmed.