## DENTON v. COLE. (No. 3271.)

Court of Civil Appeals of Texas. Amarillo.
Sept. 25, 1929.

Rehearing Denied Oct. 16, 1929.

Kimbrough & Boyce, of Amarillo, for appellant.

B. N. Richards, of Dalhart, and F. A. Cooper, of Amarillo, for appellee.

RANDOLPH, J. This suit was filed by appellee, Cole, against appellant, Denton, to recover a sum of money alleged to be due and owing him by Denton as commissions on the sale of real estate belonging to Denton. On trial the case was submitted to a jury on special issues, and, upon the answers returned by them, the court rendered judgment for the plaintiff as prayed for in his second amended original petition, and, from this judgment, appeal has been taken to this court.

The appellant's first proposition alleging error is as follows: "The allegations contained in paragraph 5 of plaintiff's second amended original petition in which liability on the part of the defendant for the payment of a five per cent. commission on the total sale price of the property by virtue of an implied agreement arising out of the acceptance of plaintiff's services, even though they were not rendered at the request of defendant, set up a new and distinct cause of action from any pleaded in plaintiff's first amended original petition and the Court erred in overruling special exceptions 2, 6A and 6B of defendant's third amended original answer to plaintiff's second amended original petition to the effect that such new cause of action was pleaded for the first time more than two years after plaintiff's cause of action accrued and was therefore barred by the two year statute of limitations. (Under 1st and 2nd assignments of error.)"

In the plaintiff's original petition filed in the trial court on April 22, 1927, and in the first amended original petition filed therein on October 21, 1927, an express contract of listing was declared on. In the plaintiff's second amended original petition filed August 18, 1928, he seeks to recover upon an express contract, and, in the alternative, upon an implied contract. The transaction whereby the express contract of listing occurred was in the year 1925. The defendant leveled a special exception at that portion of plaintiff's second amended original petition setting up an implied contract, for the reason that same presents a new and distinct cause of action from any cause of action alleged in the plaintiff's prior pleadings, and such recovery sought by the plaintiff was barred by the two-year statute of limitation (Rev. St. 1925, art. 5526). The trial court overruled this exception, and such ruling is presented to us for review.

We are of the opinion that the appellant's exception to the alternative pleading setting up an implied contract as being barred by limitation of two years should have been sustained. Such allegation of implied contract constitutes a new cause of action; the original and first amended original petition having declared only on an express contract. Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707; Clutter v. Rose (Tex. Civ. App.) 259 S. W. 1098; McCartney v. Harbin (Tex. Civ. App.) 5 S.W.(2d) 780; Prichard v. Foster (Tex. Civ. App.) 170 S. W. 1077.

But with that part of the pleading eliminated, the judgment of the trial court would find support in the pleading claiming an ex-

press contract of listing in this: While an express contract was pleaded which appeared from the face of the pleading to have been set aside by reason of the happening of the event of defendant's obtaining a renewal loan, the plaintiff's pleadings set up a renewal of the listing.

The plaintiff's pleading alleging the express contract of listing and its renewal is as follows, to wit: "That during the spring and summer of 1925, the defendant knowing that this plaintiff was engaged in the real estate business, as above set forth, came to this plaintiff and listed said property with the plaintiff for sale and authorized and instructed plaintiff to find a buyer therefor and to sell such property to such buyer for a price and sum of Sixteen Thousand and No/100 Dollars ($16,000.00), to be paid all in cash, except that the purchaser should assume and pay a loan then existing against said property in about the sum of Six Thousand and No/100 Dollars ($6,000.00), and that the defendant then and there agreed to and with this plaintiff that in the event of said plaintiff furnishing and securing a purchaser for said property for the price and terms above stated, that he would pay to this plaintiff a commission of five (5) per cent on the sale price thereof for his services, and that at the time of such listing, said defendant informed this plaintiff that he would shortly thereafter attempt to re-finance the loan then on and against said property and that in the event he succeeded in re-financing the same, said listing should no longer be effective; that said defendant did re-finance and re-adjust his loan on said property shortly thereafterwards, but never did expressly or by implication cancel the previous listing thereof with this plaintiff, but on the other hand after he had so re-financed his loan, the defendant again came into the office of plaintiff on several occasions and discussed with the plaintiff the possibility and probability of his being able to make a sale of said property under his said former listing, and in said conversation told this plaintiff that he would like to sell said property and would also like to sell his home in the City of Dalhart, Texas, and would prefer to sell the latter. And this plaintiff alleges that by reason of the foregoing acts, facts and circumstances, the defendant re-listed and ratified his former listing of said property with this plaintiff for the price and terms hereinbefore stated."

This pleading clearly alleges an express contract and a renewal thereof. The trial court submitted the express listing and the issue of the canceling and renewal thereof to the jury by the following special issue:

"Special Issue No. 1:

"(a) On the occasion of the listing of the property in question with the plaintiff, J. N. Cole, for sale, in the office of the defendant, Pem Denton, do you find and believe, from a preponderance of the evidence, that it was agreed by and between the plaintiff and defendant that such listing was to be no longer effective in the event the defendant should re-finance his loan on said property?

"(b) If so, then do you find and believe from the preponderance of the evidence that the defendant again listed with the plaintiff for sale the said property, following the financing of a new loan thereon, and prior to the beginning of the correspondence between the plaintiff and the defendant in the month of October, 1925?"

■■ The jury answered the first paragraph of issue No. 1 (a) in the affirmative and question (b) also in the affirmative. This being the status of the case, we are of the opinion that, so far as the pleading is concerned, it is sufficient to present the issue of the express listing and renewal thereof. If we are correct in this holding, the failure of the trial court to sustain the defendant's exception to the petition, on the ground of pleading of the implied contract of listing, becomes immaterial, as the judgment appears to have been rendered as well upon the renewal of the listing as upon the other issue submitted. We therefore hold that the exception to the pleading of the implied contract should have been sustained.

The appellant insists that the evidence does not sustain the verdict. Considering the evidence from the most favorable aspect to the plaintiff, we find that the plaintiff testified to the following facts:

"The spring or summer of 1925, I had a conversation with the defendant about selling that property for him. I don't know that he was about to move away from Dalhart at the time he listed this property with me for sale; I don't remember about that, but he did move afterwards. I had the conversation with him in his office about the sale of that property. His office was on the ground floor in the building we speak of.

"It would be pretty hard to remember a conversation since 1925, the exact words that we used; but the substance of that conversation is, that I went into his office and asked him if he wanted to sell this property, and he said he did, and I asked him for his lowest cash price, and he gave me his price at $16,000.00. He also told me about the indebtedness against the property; he told me there was a debt against it,—a loan against it for, I believe, about $5400.00,—something less than $6,000.00, that would have to be assumed, and, on the price of $16,000.00, he would want the balance in cash.

"I made a notation in writing of the listing at that time in a note book that I carried for that purpose. I do not have that book here with me.

"The defendant told me at that time that he would pay me a commission on $16,000.00

if I would sell it for cash; I don't remember as to his saying how much commission.

"I think he said at that time, also, that if he re-financed it, he would probably take it off the market; he said he would probably take it off of the market if he should re-finance it. What he meant by re-financing it was, he seemed to have a loan with the insurance company, I believe, that he was going to get extended; that is the way that I understood it.

"I don't remember what time of year this was; but it was sometime in the spring or summer of 1925, I believe.

"Following that, I made efforts to locate a purchaser for his property. I tried to sell the property to people that I thought was able to buy it. I remember now some of the particular parties in or about Dalhart that I made an effort to sell it to. I made an effort to sell it to J. M. Burrow and R. S. Coon.

"I talked the matter over with Mr. Coon in several places—at Houston and in Dalhart. Mr. Coon was living at that time in Houston most of the time; he spent the summers in Dalhart on his ranch. I did interest Mr. Coon in purchasing the property.

"I don't think Mr. Denton ever told me that he had re-financed the loan during the summer or fall; I understood that he had done it; he told me that he was going to Galveston for that purpose, but I don't remember now that he ever told me that he had re-financed it.

"I again talked to Mr. Coon along in the fall several times about the purchase of the property.

"After the time I state I had understood it was re-financed, Mr. Denton again came into my office and talked to me about it; that was after the time I had heard it was re-financed. At that time, Mr. Denton came into the office and listed a residence property with me for sale. He owned some residence property there at Dalhart. I told him I didn't know that I could sell it at the price he mentioned—sell this other property; but I thought that I could sell this business property, and we had some conversation there about that. He said that he would rather sell the business property first, but that he was going to have to sell some property there. At that time, he had moved to Amarillo.

"He never did, at any time, say to me to cancel that former listing, and he never told me to, or asked me to discontinue my efforts in trying to sell it. * * *

"I only had that one conversation with him after he came back from Houston, with reference to the sale of this building. I couldn't remember exactly what was said in that conversation; I couldn't remember a conversation, exactly, that long. I know the material part of it. I didn't ask him for the details of the new loan at that time; he

said he would rather,—he said he wanted to sell his home first, but was going to have to sell something. That is all that was said. I don't remember the dates, as to when this conversation took place. I couldn't tell you whether it was in the latter part of June or July, for I don't remember the date. It was not several months before the sale took place; it was a short time before the sale took place.

"As to our having this conversation about the sale of the house shortly before the sale took place, and after he re-financed his loan, I will say that I don't know when he re-financed his loan, and I can't give you the date of the conversation, only it was a short time before the sale—probably, I don't know just how long. I couldn't tell you whether it was in the latter part of June, or not.

"After this conversation, there was nothing further said until I wrote Mr. Denton this letter here of October 29th."

█ It will appear from this evidence that there was no express renewal of the former listing, and it also appears that the evidence is insufficient to establish even an implied renewal which would have been repugnant to our ruling that such contract by implication was barred by limitation.

There being no pleading seeking recovery on quantum meruit, we cannot render any judgment for the 5 per cent. upon the defendant's equity in the land over and above the indebtedness owing on it; hence, the evidence being all in, we reverse the judgment of the trial court and here render judgment that the plaintiff take nothing by his suit and that the defendant go hence without day with his costs in this behalf incurred.