BOYD & WILLIAMS v. J. J. WATSON & COMPANY, *et al.,*
Appellants.

**Land Sale Commissions:** SUB-AGENTS. Where defendant agreed to pay plaintiff's commission for sales of land in a certain county, to customers "procured" by plaintiffs, defendants were liable for such commission for sales made, to their knowledge, to customers so procured, though plaintiffs ·engaged a third person to make such sales, without the knowledge of defendants.

MISCONDUCT OF AGENT. Evidence that the agent of plaintiffs advised the son-in-law of a prospective purchaser of the property, that it was perfectly worthless and advised him to tell his father-in-law not to purchase the same, is inadmissible to show that the plaintiffs did not furnish the purchaser, so as to entitle them to the commission on the sale, in the absence of any evidence that the owners or the purchasers ever knew of the statements or were influenced by them.

WHAT ENTITLES TO. Where defendants agreed to pay commissions for customers procured for their land, plaintiffs must not only find a purchaser, but, because thereof, a sale must follow.

**Construction of Contract:** *Validity.* It was provided that brokers should have a commission on all lands sold by them in a certain county, to the knowledge of the owner; and that, on account of their influence in the county, they should have same commission on all sales made to persons living in a certain town within said county. *Held*:

    a. The contract is an entirety and valid as to both commission agreements.

    b. The broker is entitled to commission on sales made to persons living in said town, whether or not the owners knew such to be customers of the brokers.

    c. It is not material that no time limit is fixed, for it is fixed by presumption of law.

**Instruction:** ISSUES. Where defendants agreed to pay commissions for sales of land to customers "procured" by plaintiffs, an instruction that defendants were liable if plaintiff "furnished" customers, is not a departure from the issues made.

CONSTRUED. In a sale upon which commission was claimed, part of the purchase price was paid in town lots. The court charged the jury that, in fixing the verdict, it should consider the value of the

lots "as shown by the evidence." *Held*, this amounted to instruct-
ing that the lots should be dealt with at their actual and not their
trade or nominal value; and this is the true rule.

**Authority of Partner.** A member of a firm of real estate brokers is
authorized to contract with agents to act for it in making sales.
Such authority is presumed, as matter of law, and the fact that
one partner made the contract or had authority to make it, need
be neither specially averred nor proved.

**Review on Appeal:** RECORD BELOW. While it is the law that no pre-
judice shall arise from failure to demur, no question can be urged
on appeal which was not presented below.

ASSIGNMENTS. In law actions, no question will be reviewed except
upon assignments of error based upon the action of the lower
court.

*Appeal from Palo Alto District Court.*—HON. W. B.
QUARTON, Judge.

SATURDAY, FEBRUARY 6, 1897.

ACTION for a commission on the sale of land.
Judgment for plaintiffs, and the defendants appealed.
—*Affirmed.*

*Soper, Allen & Morling* for appellants.

*George R. Cloud* for appellees.

GRANGER, J.—I.  The plaintiff firm is engaged in
the business of real estate brokers, at Nevada, Story
county, Iowa.  J. J. Watson & Co., is a firm also
engaged in the real estate business.  The petition
states as follows:  "That on or about the fifteenth
day of March, A. D. 1894, both of the plaintiffs made
and entered into an oral agreement with J. J. Watson,
who was then acting for the defendant firm, to pro-
cure him customers for lands from Tama county,
Iowa, the said Watson then agreeing to pay to plain-
tiffs, five per centum of the purchase price on all sales
made to customers furnished them by the plaintiffs;

that, by the terms of said agreement, defendants also promised and agreed to pay the plaintiffs five per centum on all sales brought about or effected through the efforts and influence of the plaintiffs; that defendants, as a part of said agreement, further agreed, in consideration of the extensive and influential acquaintances of plaintiffs in Tama county, to pay them five per centum of the amount of all sales made to any one from Toledo in Tama county." It then appears from the petition that the defendant firm furnished plaintiff for sale some land, known in the record as the "Gibson Farm," consisting of some seven hundred and twenty acres. It then appears from the petition as follows: "That plaintiffs made a complete examination of said land, and took others to see it; that they corresponded regarding the same with one E. B. Arnold, who was agent for W. F. Johnson, of Tama county, Iowa, who desired, on behalf of his principal and himself, to purchase the same; that they examined property offered by said Arnold in exchange, and did all in their power, by their joint and individual exertions and influence, and at the employment of time and money, to promote the sale of said land to Arnold, and finally gave said Arnold a full description of said land, and the address of J. J. Watson, the owner thereof, that he might, if he desired, conclude the exchange of property with the defendants personally; that said Arnold did, acting for said Johnson, on the twenty-eighth day of April, A. D. 1894, buy said land for the sum of eighteen thousand dollars; that said Johnson is a resident of Toledo, Tama county, who was brought into communication with defendants by plaintiffs; that said sale was made by and through the services, exertions, and influence of plaintiffs; that plaintiffs were to receive, under the agreement mentioned above, five per cent. of the consideration or purchase price of all lands so sold by defendants

through the efforts and influence of plaintiffs in furnishing purchasers, or influencing sales to purchasers, by the defendants; that by reason of the premises the defendants became indebted to the plaintiffs in the sum of nine hundred dollars, or five per centum on eighteen thousand dollars, commission, which the defendants, although requested so to do, have failed and refused, and now fail and refuse, to pay." We have set out the language of the petition, as from that some questions can be better understood. The answer, though setting out a correspondence between the parties, is, for the purpose of our considerations, a denial. The letters are in evidence, and may be considered for the purpose for which they were pleaded and put in evidence.

The farm was sold to W. F. Johnson through the agency of E. B. Arnold, of Toledo, Iowa, he being agent for Johnson. It is claimed by plaintiff firm that one L. E. Baker acted for it in the work of procuring Johnson as a purchaser of the farm. The defendant firm wrote to plaintiff a letter, under date of May 4, 1894, because of which, with other evidence, it claims that it appears that the firm, in its negotiations, relied on the fact that Arnold's information concerning the farm came from Baker, and that the letter of May 4, disclosed the fact to the plaintiff. By this we understand the claim to be that Baker, in doing what he did to procure Arnold, as the agent for Johnson, to act, was not acting for plaintiff, and that defendants made the sale relying on such a state of facts. The court, on this branch of the case, gave instructions which are subjects of complaint, and we cannot better present the situation than to quote them, as follows: "(12) It is claimed by the plaintiffs, and evidence has been introduced by them to the effect, that one L. E. Baker was their sub-agent, or assistant, in procuring Arnold & Johnson as purchasers for the lands held for sale by

the defendants.   In regard to the acts done by the said Baker, if you find that any were done by him, inducing said Arnold & Johnson to purchase the lands in controversy, you are told that the defendants would not be bound thereby, unless you further find that the said defendants, or some of the individual members of the said partnership, had knowledge and notice of the fact that the said Arnold & Johnson were customers for the land described in the plaintiff's petition, procured, induced, or furnished by the firm of Boyd & Williams.   (13) But if, on the other hand, you should find at the time of the sale the defendants or J. J. Watson had no notice or knowledge that the said Johnson & Arnold were purchasers furnished or procured by the plaintiffs, and you should further find that no contract was entered into between the parties by which it was agreed that the plaintiffs should have five per cent. commission of the amount of all the sales made by the defendants to parties from Toledo, Tama county, Iowa, then your verdict should be for the defendants, without regard whether said sale was influenced by the said L. E. Baker or not.   (14) Under the undisputed evidence in this case, L. E. Baker was the assistant or sub-agent of Boyd & Williams for the purpose of negotiating a sale of the land described in the petition to Arnold & Johnson, and it is claimed by the plaintiffs that said sale was consummated partially through the efforts and procurement of the said Baker.   Now, if you are satisfied from the evidence that the sale of the Gibson farm was finally made to Arnold & Johnson, and that at the time, or prior to the said sale, J. J. Watson & Co., or any of the individual members of the said firm, knew that Arnold & Johnson were customers furnished and procured by Boyd & Williams, then the plaintiffs are entitled to recover a verdict at your hands."   It will be seen that the court instructed that,

from the undisputed evidence, it appeared that Baker was the assistant or sub-agent for plaintiff in regard to the sale of the land. The court further told the jury that, as to acts done by Baker, they would not be binding on defendants, unless they knew that Arnold & Johnson were customers "procured, induced or furnished" by plaintiff. It is said that there is no evidence that defendants had any information that Baker was acting for plaintiff. We do not see how that makes a difference. The liability of defendants is made to turn on the fact of whether or not plaintiff procured a purchaser. If it did, it is a matter of no moment what agencies were put in operation to secure the purchaser, so far as concerns the issues in the case It is also said that the instructions are misleading, ambiguous, and confusing. It seems to us that the instructions are their own defense to the criticism. The criticisms are in the way of queries, as follows: "What would constitute knowledge and notice of the fact that Arnold & Johnson were customers induced, or furnished, by plaintiff? Under what conditions would they be induced, or furnished, by plaintiff? What is the effect of 'undisputed evidence' that Baker was plaintiff's sub-agent?" The inference from the argument is that these expressions were not intelligible to the jury, and should not have been used, or needed explanation. There is not a word that is not of common use, and commonly understood. If such words and terms need explanations, where would explanations end? It would seem that explanations must follow explanations without limit, for we can hardly conceive of language easier of comprehension than that involved in the queries. The language is in harmony with the issues and the facts to be considered. It is also said that the instructions are erroneous as not applicable to the facts, but we do not think so. It is also urged that the court, "in a blind sort of way,"

introduced the element that Arnold was a customer procured, induced, or furnished, and refused to give an instruction that there was no evidence that Baker assisted in bringing about the sale, or that the defendants before the consummation of the sale, knew that Baker was acting for plaintiff in the negotiations, and that the jury should dismiss all consideration of evidence tending to show any such employment. As to the rule asked, it was clearly unauthorized by the record, and rightly refused. As to the language used by the court, it may be said, that the contract pleaded, is, that the commission was to be paid for customers furnished, and the averment is, that one was furnished. The words are not a departure from the issues as made, nor the evidence, and we do not discover any unfairness in the manner of their use. It is to be observed, that the contract, as pleaded, is rather unusual in its terms, in that, it was not to be a commission for a sale made by plaintiff, but for a customer furnished who would purchase. The rule of the court is sustained by the reasoning in *Blodgett v. Railway Co.*, 63 Iowa, 606 (19 N. W. Rep. 799). A rule of that case is invoked in support of a claim that defendants would not be liable unless they knew Baker was plaintiff's agent. Such a rule is not there announced. The court gave the rule of that case, that, to entitle plaintiff to recover, defendants must have known that Arnold & Johnson were plaintiff's customers. That is the correct rule. That plaintiff used Baker to aid in procuring customers for defendants, is of no significance in determining its right to compensation, further than it might be important to show that the purchaser was such a customer.

II. It is thought that, in any event, to entitle plaintiff to recover, the firm must have been "the procuring cause of the sale. They must have found and procured a purchaser, and the sale must have

proceeded from their efforts as brokers." Such language is used in *Francis v. Eddy* (Minn.) 52 N. W. Rep. 42, and some other cases. See *Armstrong v. Wann*, 29 Minn. 126 (12 N. W. Rep. 345), and cases there cited; *Wylie v. Bank*, 61 N. Y. 415. What is meant by the language will be seen by a reference to the latter case and the facts. A similar contract was considered in that case, and it appears that the land was listed with two real estate brokers, and, although the plaintiff in the case had done work in the way of procuring a purchaser, it appeared that the purchaser was actually procured by the other broker. Speaking of the plaintiff's right to recover in that case, it is said: "He must have found and produced a purchaser, and the sale must have proceeded from his efforts as broker." That means that it is not enough to find a purchaser, but the purchaser must be found, and because of it the sale must proceed. That will be seen to be the rule of the fourteenth instruction given, and quoted above.

III. Baker testified as to what he did for plaintiff to induce the sale. Afterwards defendants made the following offer of evidence, which was excluded: "Defendants offer to show by the witness, Thomas Lane, that on or about the twentieth of April, 1894, at the time and place already referred to, L. E. Baker stated to witness and George J. Consigny, Jr., that the Arnold elevator, in Toledo, was old, worn out, and rotten, and practically worthless, and asked witness, George J. Consigny, Jr., if his father-in-law, Colonel Ormsby, was interested in the trade; and, on receiving an affirmative answer from the witness, said Baker advised witness to at once notify him to stop the trade and break it off." There was no error in the ruling. It does not bear on the question of whether plaintiff furnished the purchaser. The sale is a fact in the case. The question is, who procured

the purchaser? The offer in no way indicates that the owners or purchasers ever knew of the talk, or could have been influenced by what Baker said, if he said what was proposed to be proven.

IV. The agreement with plaintiff, if made, was by Watson, of the defendant firm. The firm was engaged in the sale of lands as real estate brokers. A member of such a firm is presumably authorized to contract with agents to act for it in making sales, and pay a commission for such a service. Such an act comes within the ordinary scope of such a business, and the court so treated the case. It was not necessary for plaintiff to submit evidence on that point, nor to aver such a fact. It may also be said that the transaction seems to be in accord with the method of the firm in doing business. The issues do not seem to involve some of the questions argued here as to instructions not given nor asked. It seems to be the thought that nothing is waived because of a failure to demur to the petition. It is true that chapter 96, Acts Twenty-fifth General Assembly, provides that no pleadings shall be held insufficient on account of a failure to demur thereto; but it does not follow that questions can be presented here, not presented to the court below. In a law action we review only assignments of error based upon the action of the lower court. Code, section 3207. *Barnhart v. Farr*, 55 Iowa, 366 (7 N. W. Rep. 644); *Wood v. Whitton*, 66 Iowa, 295 (19 N. W. Rep. 907), and (23 N. W. Rep. 675). As to some of the points argued there are no assignments to bring them in question in this court, and it does not appear that the lower court ever considered the questions.

V. In the petition it is averred that, as part of the contract by which plaintiff was to have a commission of five per cent. on all sales to purchasers procured in Tama county, it was agreed, because of

plaintiff's extensive and influential acquaintance in Tama county, that on all sales made to any one from Toledo, in that county, five per cent. was to be paid on the amount thereof. The court instructed, as to that branch of the agreement, that recovery could be had regardless of the fact of defendants having knowledge that Arnold & Johnson were customers of plaintiff. The rule of the instructions amounts to this: As to customers furnished from Tama county, outside of Toledo, a commission was to be paid if defendants knew them to be customers of plaintiff. As to customers from Toledo, a commission was to be paid independent of such knowledge, or of the fact that they were customers of plaintiffs. It is urged that such a contract (that is, that as to customers from Toledo) is illegal. In support of the claim, it is said the agreements to pay under different facts are distinct contracts; and therein lies a mistake, and an important one. It is expressly stated that the agreement as to customers from Toledo was a part of the agreement as to Tama county, and the court so said to the jury. The averment is, also, that the extensive and influential acquaintance of plaintiff in Tama county was the consideration for the agreement as to Toledo customers, showing that the promise was made to secure services in the county. We do not see why such an agreement is not valid. It is said in support of the claim of invalidity that there is no limit as to time. It would not be invalid because of that fact. The presumptions of the law would fix the limit. But, more than this, the other parts of the contract are conceded to be valid, and they are precisely the same as to the limit of time.

VI. The commission to be paid was five per cent. on the purchase price. A part of the price paid was in town lots. The court told the jury that, in fixing

the amount of its verdict, it should consider the value of the lots as shown by the evidence. The complaint is, that the jury were not told whether to take the nominal consideration, or actual value. We understand the term "nominal consideration" to mean an inflated or "trade value." It is said the actual value should be used, and we think that is correct. We also think that was the intent of the instruction, and what was understood. We discover no other question demanding consideration, and the judgment will stand AFFIRMED.