C. I. FAWLEY, Appellee, v. C. H. SHELDON, Appellant.

**PLEADING:** Issue, Proof and Variance—Brokers—"To Find Purchaser"—"To Sell." An allegation that a broker was employed "to find a purchaser" may be sustained by evidence that he was

employed "to sell," but without power to fix the terms of sale.

**BROKERS:** Commission—Sale to One Not Known to be Broker's
2  Customer. A broker armed with simple authority to find a purchaser, on terms to be dictated by the owner of the property, or a broker armed with authority to find a *cash* purchaser in an amount to be dictated by the said owner, is entitled to no commission on a sale by the owner to a purchaser *not known to the owner to have been procured by the broker.*

**BROKERS:** Commission—Sale to One Not Known to be Broker's
3  Customer—Effect. The effect of want of knowledge on the part of an owner of property that he was selling to a customer secured by his broker is *not* sufficiently presented to the jury by a statement, in effect, that the failure of the broker to apprise the owner that he (the owner) was dealing with a customer secured by the broker, bore only on the question as to whether the broker did procure such purchaser.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

TUESDAY, JUNE 26, 1917.

ACTION to recover commission on the sale of real estate. There was a trial to a jury and a verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*F. L. Anderson,* for appellant.

*Voris & Haas,* for appellee.

PRESTON, J.—The petition alleges that defendant was the owner of a stock of hardware, and verbally agreed to pay plaintiff the sum of $150, as a commission, if plaintiff would find a purchaser to whom said stock might be sold; that, pursuant to such agreement, plaintiff did find and procure one Miller as a purchaser, and said stock was sold to Miller. Defendant denied all allegations of the petition.

1. PLEADING : issue, proof and variance : brokers : "to find purchaser :" "to sell."

Appellant contends that plaintiff declared upon an oral agreement to find a purchaser, and that the proof does not sustain the allegations, because the testimony showed that the undertaking was to make a sale for cash; and that the proof shows, without dispute, that the sale was not for

cash, because defendant took a note for $3,900 in part payment; and that, therefore, plaintiff had not performed his agreement, and is not entitled to a commission.

Appellee contends that, although the plaintiff in his testimony does not word the contract just as alleged in the petition, yet it means the same thing; that is, that plaintiff was to find a purchaser. In his testimony, plaintiff says, "Mr. Sheldon told me that he would pay me $150 commission if I would sell the stock for him;" and that later, defendant repeated his former statement. The defendant testifies:

"I told Mr. Fawley that, if he could sell my stock of hardware for cash, I would pay him a commission. I had no further talk with him about it until after I had completed the sale to Mr. Miller."

On cross-examination, he testified:

"He told me that he was advertising the stock, and showed me some letters he had received. I think I read one or two of them. He told me that he had written some letters. I know he told me he was trying to sell the stock; he told me he was doing some advertising. I suppose that it was costing him something to advertise—it usually did me. Yes, I knew as a matter of fact he was trying to dispose of that stock for me, and I knew it was in pursuance of the talks he had had with me before, that I was to pay him a commission if he sold it. The first time Mr. Breed came to the store, I asked him where he got his information, and he said Joe Streator had told him of the stock. Breed wanted to trade for it, and I told him the stock was not for trade. When he went away the first time the transaction, as far as he and I were concerned, was ended. A few days after that,—I don't remember just how long,—Mr. Breed returned to the store with Oscar Miller. Miller was represented to be the man who wanted to buy the stock. Fawley came to the store a little later, and was

introduced to Mr. Miller. He was acquainted with Mr. Breed. After we had done some talking, I gave them the refusal of the stock for a week or ten days. I gave them the price at which I would sell. No, I hadn't told Mr. Breed the price I would take when he was there the first time. The first time I named a price was that morning when Mr. Miller was there. When Breed came there the first time and commenced talking trade, I didn't want to do business with him at all. But when Miller was brought there by Breed, I fixed the price, and told them my price was 100 cents on the dollar, invoice price, plus 5 per cent for freight. Q. That is what you had told Mr. Fawley you would sell for, wasn't it? A. I don't remember whether I did or did not. Q. You wanted Mr. Fawley to make a sale of the place? A. Yes, I told him. Q. Didn't you tell him what the price would be? A. No, sir; I didn't tell him what the sale would amount to—what the stock would amount to. Q. Well, you told him it was 100 cents on the dollar? A. Whatever it was,—yes, I told him 100 cents on the dollar. Q. How much were you to have for freight? A. Five per cent. Q. When did you tell him that? A. That morning, I think, after I talked with Mr. Miller and Mr. Breed. Q. But what did you tell him about the price at the time you listed it with him? A. I don't remember as I told him. Q. How did you expect him to sell it unless he knew what the price was? A. To the best of my recollection, I told Mr. Fawley if he sold the stock of hardware, I would pay him a commission. Q. Didn't you give him any price? A. Nothing was said about the price. Q. Then you expected him to get a buyer and you would fix the price, did you? A. I expected to have something to say about it. Q. As a matter of fact, when the buyer came, you did fix the price? A. Yes, sir. Q. And told Mr. Fawley the price you had fixed? A. I told him that day the price I had fixed, yes, sir."

A part of this testimony, or the way he puts it in one place therein, where he says that he expected plaintiff to get a buyer, sustains the allegations of plaintiff's petition, although plaintiff puts it that he was to sell. We think it cannot be seriously claimed that, by the use of the words that plaintiff was to sell, either party contemplated that plaintiff was to have authority to conclude a binding contract to sell defendant's property. And, as said in some of the cases, such words usually mean that the agent is to negotiate a sale by finding a purchaser, etc. See *Keim v. Lindley*, (N. J.) 30 Atl. 1063, 1073; *Ford v. Easley*, 88 Iowa 603; *Bird v. Phillips*, 115 Iowa 703; *Furst v. Tweed*, 93 Iowa 300; *Holmes v. Redhead*, 104 Iowa 399. So that we think the allegations of the petition are sustained, in so far as the point is made that the proof showed a contract to sell, whereas the petition alleged a contract to find a purchaser. It is contended by appellant that, if the contract is to make a sale, and the sale is to be a sale for cash, a commission is not earned unless the agent makes a cash sale, and the acceptance of a note is not cash. The plaintiff in his testimony said nothing as to the terms of sale,— that is, as to whether it should be cash or not,—and defendant testifies that it was to be a cash sale. Appellant cites authority that, under plaintiff's testimony, a sale without any terms' being mentioned as to whether it should be cash or not, is a cash sale.

In the instant case, the undisputed evidence is that plaintiff sold his stock of goods for $1,500 cash and a note signed by one Breed, for $3,900. But, as we have already held, the jury was justified in finding that, under the testimony, the contract was that plaintiff was to find a purchaser. The more important point in the case, we think, is the question as to the effect of plaintiff's failure to inform defendant that Miller, the purchas-

2. BROKERS: commission: sale to one not known to be broker's customer.

er, was plaintiff's customer. The appellant contends that the evidence is undisputed that defendant did not have such notice or knowledge before the consummation of the trade. Appellee contends that there is evidence tending to show that defendant did have such knowledge. The question is presented by appellant in different ways; first, by motion to direct a verdict for the defendant. Of course, a different rule obtains on motion to direct a verdict, and on the submission of the case to the jury under instructions. If the evidence was in conflict as to defendant's knowledge or notice of that fact, then the motion to direct a verdict on that ground was properly overruled; but, in submitting the case to the jury, the effect of the want of such notice, if the jury should so find, should be submitted under proper instructions. The question was raised further by appellant by offered instructions by him, and we think his exceptions to the instructions given are sufficient to save the point, although counsel for appellee contend otherwise. The trial court instructed the jury in Instruction No. 4, which is, in part, as follows:

"And the fact, if it be a fact, as claimed by defendant, that plaintiff did not communicate to defendant that said Oscar Miller was the plaintiff's customer is material only as it may be given weight with all of the other facts and circumstances, as tending to prove that plaintiff did not procure such purchaser."

The appellant offered a number of instructions covering in different ways the thought that it was material that plaintiff should have notified the defendant that Miller was plaintiff's customer, and that a failure so to do would, under certain circumstances, prevent a recovery by plaintiff. Appellant's contention at this point now is that the evidence was such that the jury could have found the facts to be such as to bring the case within the law as announced in *Blodgett v. Sioux City & St. P. R. Co.*, 63 Iowa 606, and

other like cases which will be referred to later; while appellee contends that the case is more like *Rounds v. Alee*, 116 Iowa 345; although, as we understand his argument, he concedes that Instruction No. 4 is erroneous, but, as said, claims that the appellant did not properly except to it.

There are some other circumstances which perhaps ought to be referred to, bearing on the question as to whether or not defendant had knowledge or notice that Miller, the purchaser, was the plaintiff's customer, so as to claim a commission from the defendant, and as bearing on the question as to whether the terms of the sale were agreed upon or specified. It is plaintiff's claim that he furnished Mr. Miller as a purchaser through a subagent, John Breed. There is evidence tending to show that, in February, 1915, Breed, who was a stranger to both parties to this suit, called at the defendant's store in the town of Coggon and had a conversation with defendant about his stock of hardware, which conversation was overheard by plaintiff, who had desk room in defendant's store—plaintiff had had no communication with Breed before this; that, after Breed left defendant's store, plaintiff went to the depot with Breed, who told plaintiff that he (Breed) knew of a man at Anamosa who might be interested, and plaintiff told Breed that there was a commission of $150 for selling this stock, and if Breed would interest this man, he would divide the commission. In March, Breed returned to Coggon with Miller, who looked the stock over and obtained from defendant an option to purchase it. While Miller and defendant were talking about the stock, plaintiff came into the store, and was introduced to Miller by the defendant. The next week, Miller called again, and purchased the stock from defendant, paying $1,500 cash, and giving his note for the balance, $3,900, signed by himself and Breed, due in one year. There is evidence tending to show that neither plaintiff nor his alleged sub-

agent, Breed, informed defendant that Miller was the cus-
tomer of the plaintiff, and that defendant did not know
until after the deal was closed that plaintiff would claim a
commission. The defendant testified that he did not know
and understand that he was dealing with a customer pro-
duced by plaintiff, and appellant contends that he had no
reason to believe that he was dealing with the plaintiff's
customer. On the other hand, it is contended by appel-
lee that there was evidence from which the jury could find
that defendant did know that fact, and that at least there
was a conflict on this point; and we think this is so. It
appears that Breed came to defendant and proposed a
trade, which was refused. There is no claim that plaintiff
first brought Breed to the town of Coggon. Defendant
testifies:

"The first time Breed came to the store, I asked him
where he got his information, and he said Joe Streator
had told him of the stock. Breed wanted to trade for it,
and I told him the stock was not for trade. When he went
away the first time, the transaction, as far as he and I
were concerned, was ended."

When Breed left the store that morning, plaintiff ac-
companied him to the station, and, as before stated, had a
talk with him in regard to dividing the commission; and
plaintiff says then:

"I came back to the store and told Mr. Sheldon that
Mr. Breed knew of a man in Anamosa that he was going
to try and bring up and buy the stock. I returned to the
store and informed Mr. Sheldon of my arrangement with
Mr. Breed immediately after Mr. Breed left."

There may be other circumstances bearing on this.
At any rate, it is appellee's contention that, according to
the testimony of plaintiff, defendant had full knowledge of
the arrangement Fawley had just made with Breed; and
that, if Breed afterwards returned with the purchaser, such

purchaser must be considered as a customer of plaintiff's under his arrangement with Breed; for Sheldon had no relations whatever with Breed, and he contends that Miller was in fact secured by Breed after his arrangement with Fawley.

As to whether or not the contract was that plaintiff was to secure a purchaser on specified terms, it should be noted that the petition did not so allege. We have already set out the testimony of the defendant in cross-examination on the question as to the alleged terms, so that there is no testimony in the case by either party that a definite price was fixed at which defendant should sell his stock. Defendant testifies, as before set out, that nothing was said about the price, and he also says that he expected plaintiff to get a buyer, and he (defendant) would fix the price, and that he did fix the price. So that, in this view of the testimony, plaintiff, according to his claim, brought the purchaser, Miller, to the defendant, and Miller and the defendant negotiated as to the terms of sale. The most that can be said as to any definite terms of sale is that it is claimed that the stock should be sold at 100 cents on the dollar, and 5 per cent added for freight. But the jury could have found from the testimony that the sale was to have been a cash sale, and that it was not a cash sale. They could have found, also, that the terms of sale were not agreed upon and that they were not a part of the contract, but that defendant and Miller negotiated and fixed the terms themselves; and they could have found that defendant had no knowledge or notice that Miller was plaintiff's customer, and that plaintiff would claim a commission. This being so, even though defendant's motion for a directed verdict was properly overruled on this ground, still, as defendant asked an instruction bearing upon the question of defendant's want of knowledge that Miller was plaintiff's customer, and such instruction being in line with the follow-

ing cases, it should have been given. *Blodgett v. Sioux City & St. P. R. Co.*, 63 Iowa 606; *Boyd v. Watson*, 101 Iowa 214; *Gilbert v. McCullough*, 146 Iowa 333; *Seevers v. Cleveland Coal Co.*, 158 Iowa 574, 588.

As before shown, the court instructed

3. BROKERS: commission: sale to one not known to be broker's customer: effect.

that defendant's knowledge on this subject was material only as tending to prove that plaintiff did not procure the purchaser; but we think this was too narrow, and was to the prejudice of the defendant. Had the jury found that the terms of sale were not fixed, but that they were determined by negotiation between Miller and defendant, and that it was to have been a cash sale, whereas it was not for cash, then we think the defendant was entitled to know that plaintiff was claiming that Miller was defendant's customer, and that plaintiff was anticipating a commission. Had defendant known that fact, it might have had an important bearing in his mind in the negotiations between defendant and Miller. The facts are not, of course, exactly like those in the cases last cited, but, as said, there is one theory of the evidence upon which the jury could have found as contended by defendant, which would make the rule laid down in the cases applicable. Appellee relies on the case of *Rounds v. Alee*, 116 Iowa 345. There may be one theory of the testimony which would render the rule in that case applicable also, had the jury so found. But the distinction between the *Rounds* case and the *Blodgett* and *Boyd* cases is pointed out by the court in *Gilbert v. McCullough*, 146 Iowa 333, at 336, where it is said that, in the *Rounds* case, the price was named and the sale effected at such price; while in the others, the consideration was a matter of negotiation.

It is our conclusion that Instruction No. 4 is erroneous, and that defendant was entitled to an instruction on

the theory suggested, and that, for this reason, the judgment must be reversed.

Appellee contends that, as there was evidence tending to prove that plaintiff was employed to find a purchaser for the stock at invoiced price, plus five per cent for freight, according to plaintiff's testimony, or to find a purchaser, according to the defendant's testimony, at a price to be fixed by him, and that the purchaser was procured and the sale in fact made at a price on terms satisfactory to the defendant, therefore, in such a case, plaintiff is entitled to recover, under the authorities; and cites *Reid v. McNerney,* 128 Iowa 350, *Hanna v. Collins,* 69 Iowa 51, and cases from other jurisdictions. But in the cases just referred to, the question as to whether the seller of property had knowledge or notice that the agent was claiming the purchaser to be his customer was not involved.

Some other questions are argued briefly. One is that the court erred in sustaining plaintiff's objection to questions propounded to Streator. But the record is such that it is doubtful, to say the least, whether appellant is in a position to be heard here. This, and perhaps some of the other questions, are not such as are likely to occur upon another trial, and we shall not take the time or space to discuss them.

For the error pointed out, the judgment is reversed and the cause remanded for a new trial.—*Reversed and remanded.*

GAYNOR, C. J., LADD and STEVENS, JJ., concur.