ELMER DUCUMMON, appellee, v. D. G. JOHNSON, appellant.

No. 47842.

(Reported in 47 N.W.2d 231)

APRIL 4, 1951.

490

Burt & Prichard, of Emmetsburg, for appellant.

Van Alstine & Van Alstine, of Pocahontas, and Kelly & Spies, of Emmetsburg, for appellee.

THOMPSON, J.—Plaintiff's petition alleges that in October 1946 he was a licensed real estate broker, and at that time he was orally employed by defendant to sell 320 acres of land in Palo Alto County, Iowa, for $225 per acre, and that upon procuring a buyer ready, willing and able to purchase on terms specified by defendant plaintiff was to receive a commission of two per cent of the purchase price.

It is further alleged that plaintiff showed the land to one M. S. Grossnickle on August 22, 1947, and immediately thereafter Grossnickle purchased it from defendant at a price believed to be $72,600. Refusal to pay plaintiff a commission is further pleaded.

Defendant's answer denies that plaintiff was a licensed real estate broker, admits the oral listing agreement as claimed by plaintiff, but denies an exclusive agency in plaintiff. Defendant admits the sale to Grossnickle, but denies that the price was $72,600; denies that plaintiff was the procuring cause of the sale; alleges that he had no knowledge plaintiff had showed the land to Grossnickle, and admits that he paid no commission to plaintiff. There was a trial to a jury and verdict and judgment for plaintiff in the sum of $1440, as prayed.

Upon oral argument and submission of the cause in this court defendant, through his counsel, announced that he relied upon three grounds for reversal. With one omission, which will be noted later, they are, in substance, the same as those set out in the "Statement of Errors" or errors relied upon for reversal in defendant's written brief and argument. They will be considered in the order presented.

I. The first error claimed arises from plaintiff's failure to show that at the time he sold to Grossnickle defendant had notice or knowledge that plaintiff had ever shown the land to Grossnickle. This, defendant thinks, is in itself sufficient to prevent a recovery by plaintiff.

Certainly the evidence here shows that plaintiff had not notified defendant that he had contacted Grossnickle as a pro-

spective purchaser prior to the time the contract for the sale was made. And, just as certainly, we have held that under certain circumstances such failure to notify, in the absence of knowledge obtained by the seller in some other way, bars a finding for the plaintiff. Fawley v. Sheldon, 180 Iowa 795, 163 N.W. 585; Gilbert v. McCullough, 146 Iowa 333, 125 N.W. 173; Blodgett v. Sioux City & St. Paul Ry. Co., 63 Iowa 606, 19 N.W. 799. Other cases might be cited.

However, some examination of the evidence in the case becomes important at this point. Plaintiff testified that on August 22, 1947, at Grossnickle's request, he took him out to show him farms which plaintiff had listed for sale. Grossnickle was a long-time neighbor of defendant, living about three miles distant. Plaintiff's testimony is that he drove to and along the Johnson farm, telling Grossnickle it was for sale at $225 per acre, and that plaintiff considered it about the best buy he had. Grossnickle said he was not interested; that the farm was weedy and the fences and buildings not good. Plaintiff testified to some further conversation; that he took Grossnickle to look at other farms; that on the way back in the late afternoon he attempted to take Grossnickle to talk to defendant but Grossnickle again said: "I am not interested. Take me home." Grossnickle did, however, ask plaintiff to take him along the west side of the Johnson farm, saying he had not seen that quarter for quite a while.

Further testimony by plaintiff shows that on the next morning, August 23, he went to the defendant's home but was unable to see him. Returning in the afternoon of the same day he was told by defendant that he had sold the farm to Grossnickle.

Some of the matters set forth above as part of plaintiff's testimony are denied by Grossnickle and by defendant. But since defendant raised the question of notice and knowledge only by motion for directed verdict, we must take the evidence in its aspect most favorable to plaintiff. The question is, assuming that those things are true which the jury could have found to be true, was the defendant entitled to a verdict direction notwithstanding?

It will be observed that, upon his own version, plaintiff

had almost no opportunity to advise the defendant that Grossnickle was his customer. The sale was made overnight. Grossnickle refused to go with plaintiff to talk with the defendant on the late afternoon of August 22. Plaintiff was unable to see the defendant on the morning of August 23 although he called at his farm. Finding him in the early afternoon of the same day he was told (which apparently he had learned some hours earlier) that the sale was made. If plaintiff had a duty to tell his principal, the defendant, that he had produced Grossnickle as a customer it is difficult to see how he could have performed it more promptly than he attempted to do; or, in another view, how he could have performed it before Grossnickle had contacted the defendant and they had made the contract of sale. We should be reluctant, in any event, to approve a rule of law which would place such an almost impossible burden upon the broker. Reasonable promptness, under all existing circumstances, seems all that should be required. However, it is not necessary to analyze that feature of the situation further. There are two other points appearing in the record which take all force and merit from defendant's contention concerning lack of notice or knowledge.

First, there is the plaintiff's testimony as to the brokerage contract. He says:

"We made the deal on the commission and then I said, 'Now, Mr. Johnson, if I find a buyer for this farm before I sign a contract with him I will bring the buyer to you so we will know where we are at, and I will expect the same thing of you,' and he said, 'All right, and if I get someone interested I will let you know too.' "

The jury could have found that the defendant had agreed to notify plaintiff if he, the defendant, had a prospect. It is sure that if he had done so in this case he would have learned promptly, and before closing the contract, of plaintiff's claim. The defendant's want of notice or knowledge, in this viewpoint, stems from his own failure to do as he had agreed.

Nor, upon analysis, is there any authority in Iowa which requires a broker to give notice to his principal when the sale is made by the latter at the price fixed in the listing agreement.

This case is ruled by Rounds v. Alee, 116 Iowa 345, 348, 89 N.W. 1098, and Kelly v. Stone, 94 Iowa 316, 62 N.W. 842. In the Rounds case we said:

"The fact that defendant did not know Gravesen had been sent to him by plaintiff is not controlling. It was no part of the contract. All he was to do was to find a purchaser who was ready, able, and willing to buy, or would in fact buy; and if he did, the contract was fulfilled, regardless of defendant's information of what he had done."

The distinction between Rounds v. Alee, supra, and the authorities, supra, relied upon by defendant is shown thus in Gilbert v. McCullough, supra, at page 334 of 146 Iowa:

"In Rounds v. Alee, 116 Iowa 345, an agent, having been employed to find a purchaser for land at a specified price, was held to be entitled to his commission if the efficient cause in procuring a purchaser, at the price named, to whom the principal sold, even though the principal knew nothing of what had been done; the agent not having had an opportunity of informing him. And this ruling is amply sustained by authority. Lloyd v. Matthews, 51 N. Y. 124; Craig v. Wead, 58 Neb. 782, 79 N.W. 718; Hovey v. Aaron, 132 Mo. App. 573, 113 S.W. 718; Graves v. Bains, 78 Tex. 92, 14 S.W. 256; 19 Cyc. 264. This case is to be distinguished from Rounds v. Alee, in that the sale was for a price less than that named to the agent, and, though the latter had submitted an offer equal to that received by the owner, he had withheld the name of the proposed purchaser."

In the same case we said (page 336): "The distinction between the above case and Rounds v. Alee is that, in the latter, the price was named, and the sale effected at such price, while, in Boyd v. Watson [101 Iowa 214, 70 N.W. 120], the consideration was a matter of negotiation. See, also, Blodgett v. Railway, 63 Iowa 606."

This distinction is referred to in Fawley v. Sheldon, supra, cited by defendant. It is in point here. Defendant admittedly received the full cash price for his land—the same price at which he had listed it with the plaintiff. Nor did he become liable to another agent.

It is true that in Moore v. Griffith, 234 Iowa 1024, 1028, 14 N.W.2d 644, and Morton v. Drichel, 237 Iowa 1209, 1211, 24 N.W.2d 812, we made reference to the duty of the broker to make known to his principal "that his customer is a prospective buyer." But it has been pointed out that this rule does not apply to all situations. See, generally, 12 C. J. S., Brokers, section 91a, pages 209, 210.

' Defendant has no meritorious complaint at this point.

■ II. The next alleged error is based upon the refusal of the court to direct a jury finding for defendant upon the ground that there was no substantial evidence that plaintiff was the efficient procuring cause of the sale. Defendant here leans heavily upon Donahoe v. Denman, 223 Iowa 1273, 275 N.W. 154, and points out that we have discarded the "scintilla of evidence" rule. But each case must rest upon its own particular facts. We have set out in Division I much of the evidence favorable to plaintiff. The jury could have found that plaintiff took the buyer to the farm and past it twice, told him it was for sale, and the price; that it was about the best buy he had, and was a cheap farm at the price. There was also evidence from which it could have been found that the sale to Grossnickle was made in less than twenty-four hours after the farm was shown to him by plaintiff. This has much significance when we are considering whether there was a jury question as to the efficient and producing cause of the sale. While defendant and Grossnickle say that the sale was not made until about one week later, neither claims that there had been any negotiation between them until after the fact that the farm was on the market was called to Grossnickle's attention by the plaintiff. The facts as they bear upon the question of "efficient procuring cause" are much like those in Morton v. Drichel, supra. The situation required a jury consideration and determination.

■ III. The third and last assignment of error enumerated upon the oral submission, and there argued by counsel for defendant, concerns the claimed failure of the plaintiff to prove that at the time of the listing and of the sale—in the years 1946 and 1947—he was a duly licensed real estate broker in the state of Iowa. We may concede that this was an essential part of plaintiff's case. Section 117.30, Code of Iowa, 1946, 1950, says:

"No person, copartnership, association, or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or salesman without alleging and proving that such person, copartnership, association, or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

Plaintiff testified, without objection: "I have a license as a real estate broker in this state. I got my real estate license in 1945—in the summer of 1945. I have been actively engaged in that business ever since then. I was engaged in the real estate and auctioneering business in October 1946."

On redirect examination of plaintiff we find the following: "Q. Mr. Ducummon, you testified yesterday that you had a real estate broker's license in 1946 and 1947? A. Yes, sir." The question was then asked as to what state issued the license, objection that it did not call for the best evidence was made and overruled, and the witness answered: "The state of Iowa." This is the basis of defendant's assignment of error at this point.

It is without merit. Plaintiff had been permitted to say that he had a license as a real estate broker "in this state," and that he got it in 1945 and had been actively engaged in that business ever since; also, that he had a real estate broker's license for 1946 and 1947. All this came in without objection. It sufficiently appears therefrom that plaintiff had an Iowa broker's license at all material times. We need not determine whether it is necessary to avoid the challenge of the "best evidence" rule that a real estate broker, or a doctor, or a lawyer, produce his actual written license or certificate. Secondary evidence, if proper objection is not made, has weight and may support a finding of fact. This is especially true where there is no contradiction in the opposing evidence. If there was error in the ruling of the trial court set out above—which we do not determine—it was without prejudice, since substantially the same proof had previously been admitted without objection.

■ IV. A fourth assignment of error in defendant's written brief and argument concerns a ruling upon evidence. The record shows this in the direct examination of defendant's witness Grossnickle:

"Q. Did Mr. Ducummon have anything to do with your purchase of the Johnson farm?

"Mr. Van Alstine: Just a minute. I object to that as calling for a conclusion.

"The Court: In that form it is a conclusion, Mr. Prichard. Sustained. (To which ruling the defendant excepts.)

"Q. Did Mr. Ducummon's conversation or other actions have any influence upon you in the ultimate purchase of the Johnson farm? A. No.

"Mr. Van Alstine: Just a minute, please. I object to that as calling for a conclusion, and a self-serving declaration without any foundation.

"The Court: Sustained. The witness can testify what he said and what he did to show the transaction. (To which ruling the defendant excepts.)"

It will be observed that the answer to the second question was received and after it was in objection was made and sustained. There was no motion to strike. The situation is ruled by Marple v. Ives, 111 Iowa 602, 603, 82 N.W. 1017, and Livingstone v. Dole, 184 Iowa 1340, 1343, 167 N.W. 639, 641. In Marple v. Ives we said: "Exceptions are taken to certain rulings of the court sustaining objections to questions asked by plaintiff of the witness King; but the witness answered in each instance, and his answers were allowed to stand, so no prejudice could have resulted."

In the Livingstone case, this court, after setting out a question and answer, said: "An objection was then interposed and sustained, but there was no motion to strike the answer. As the answer remained in the record, appellant was not harmed by the ruling, and it is not subject to review at her instance."

These decisions are squarely in point.

In his reply argument defendant urges that "when he [the trial judge] states to them [the jury] that they must not consider for any purpose testimony to which he has sustained an

objection, such testimony, though in the record, has lost all probative force." Here defendant overlooks the fact that there is no showing that the court told the jury what defendant assumes, in the foregoing quote, that he did. Defendant took no exceptions to instructions and consequently they are not set out in the record. In any event, we should not be inclined to overrule Marple v. Ives and Livingstone v. Dole, both supra.

We find no prejudicial error.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.