STATE OF IOWA, appellee, v. DONALD H. SMITH, appellant.

No. 48952.

(Reported in 81 N.W.2d 657)

MARCH 5, 1957.

Morris & Morris and Lawyer & Lawyer, all of Des Moines, for appellant.

Dayton Countryman, Attorney General, Dudley C. Lowry, Assistant Attorney General, and Bert A. Bandstra, County Attorney, for appellee.

THOMPSON, J.—I. The first three errors assigned by the defendant—assuming that the five points set out in his brief and argument under the heading "The issues are:" constitute an assignment of errors— all turn upon the question whether there was sufficient corroboration of accomplices. On the early morning of July 13, 1955, Donald Warden and Dean Coltrain broke and entered the Shadle and Sons store in Pleasantville in Marion County. They took therefrom a small safe which they later broke open and which contained about $800. Warden was the State's principal witness against the defendant upon the trial.

Coltrain also testified for the State. It is their testimony, particularly that of Warden, which was the most damaging, which defendant says was not corroborated within the meaning of the Iowa statute. From this premise he further urges that the trial court should have directed a verdict in his favor, or should have granted his motions in arrest of judgment or for judgment notwithstanding verdict. We shall assume that if there was no sufficient corroboration of the accomplices there was such lack of evidence as to require a directed verdict. But an examination of the record demonstrates that there was ample corroboration.

While the defendant did not take part in the actual breaking and entering, he is connected with the offense by testimony of Donald Warden that he told Warden, shortly before the break-in, that the store would be "easy to get into." He knew that Warden had burglarized other places. He told Warden there was a safe in the store, and that the store could be easily entered from the back.

After the burglary, on the evening of July 14, Warden got in touch with the defendant. In company with two other men, Milton Monson and Billy James Williams, and in Monson's car, they drove out on the Indianola Road. It is Warden's testimony that Smith—the defendant—stated he wanted 25% of the proceeds of the break-in, and asked him why Coltrain had not given him any money from Shadle's. The witness gave Smith $50 at that time. It appears that Warden had left the money, representing his share of the theft, in the glove compartment of Monson's car. It was in a leather case in which it had been taken from the safe, bearing the printed words "Pleasantville State Bank."

The accomplice Warden thus makes a case, in no way difficult to understand, which shows that the defendant first told him of the Shadle store and the ease with which it could be entered. He did this knowing of Warden's propensity for this form of midnight labor. It will hardly avail him to say that he was speaking lightly with no thought that Warden might take him at his word. His prompt claim of a share in the proceeds discloses his motive in advising Warden of the potentialities of the store as an easy victim of a burglary. It would be

unrealistic for us to say that there was no evidence of any criminal intent on the defendant's part, or that he was not a participant in the crime. No authority is needed for the proposition that one who advises of a likely spot for a burglary, who "puts the finger" on the place, and who demands and receives a share of the proceeds, is an aider and abetter in the crime and is equally guilty with those who do the actual breaking and entering.

So far we have discussed only the testimony of Warden, who was of course an accomplice if his story is true. Of course there must have been corroboration if an issue for jury consideration was made. This is required by section 782.5 of the Code of 1954, which we quote:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

■ We find ample corroboration in the testimony of Milton Monson. There is nothing to indicate that Monson was himself an accomplice. There is evidence that he received some money from Warden after the burglary and he quite evidently then knew of the break-in. If we should assume he was guilty of receiving stolen property, yet as the defendant points out—for what reason is not apparent—one who receives stolen property is not an accomplice in the original theft. State v. Smith, 219 Iowa 168, 174, 256 N.W. 651; State v. Wenks, 200 Iowa 669, 671, 202 N.W. 753; State v. Boyd, 195 Iowa 1091, 1095, 191 N.W. 84; State v. Feinberg, 145 Iowa 329, 331, 124 N.W. 208; State v. Scott, 136 Iowa 152, 155, 113 N.W. 758. We turn then to Monson's testimony. He said that on the evening of July 14, 1955, the next day after the burglary, he went to Warden's home and found him with the defendant and Jimmy Coltrain— the latter being a brother of Dean Coltrain who took part with Warden in the actual burglary—sitting in the defendant's car. The witness suggested going for a ride in his car. They got into his car, and the defendant "wanted to know when he was going to get his cut in this break-in down here." Being asked if "down here" meant Pleasantville, the witness answered without objec-

tion that it did. Warden said he had not seen Dean Coltrain to get his half of that cut, but he would get it from Coltrain later. He gave the defendant about $50. The defendant wasn't satisfied and wanted more. This then appears in the record: "Don Smith said he didn't know whether he wanted to case any more places for the boys on account of Dean Coltrain didn't want to kick in."

There is also testimony from two employees of the Shadle store that on July 12, the day before the burglary, the defendant and another young man, later identified as the defendant's witness Billy James Williams, were in the store. They came into the dry goods department and looked about. The defendant had been in the store before in connection with his work as a deliverer of soft drinks for a Des Moines company, but had not entered the dry goods department. The sheriff of Marion County testified that on July 17 following the burglary the defendant told him he had told Warden "it would be a good place", and that he had received $18 from Warden.

All this is of course more than ample corroboration of the testimony of Warden, the admitted accomplice. It seems to be the defendant's theory that merely telling Warden about the Pleasantville store and the ease with which it could be entered did not make him an aider and abetter. He thinks his remark should be considered as entirely casual and harmless. The record shows that he knew Warden had broken and entered other places. We cannot say there was not a jury question on his intent in advising Warden of the vulnerability of the Shadle store. He who places a saucer of cream before a hungry cat should not be surprised if it is consumed. The intent with which Smith told Warden about the ease of entrance of the store is made clear also by his demand for a share of the proceeds of the crime, and his threat to refuse to "case" any more places because he was not satisfied with his dividend from the Shadle robbery. There was an abundance of evidence making him a participant in the crime and corroborating the testimony of the accomplice Warden. Submission of the issue to the jury was not only justified but required.

II. The defendant complains of Instruction No. 12 in which the court told the jury that all persons who are concerned

in the commission of a public offense, whether they directly commit it or aid and abet it, are principals. The instruction then defined aiding and abetting as assenting to an act, or lending it countenance or approval, "either by active participation in it or by in some manner advising or encouraging it, before or at the time of the commission." Accessories before the fact are in Iowa principals, by virtue of section 688.1, Code of 1954, which we set out:

"The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

The defendant in argument concedes that the instruction is "partially" correct. It seems to be his contention that there is no evidence sufficient for jury consideration that he in any way aided and abetted the commission of the offense charged. We have discussed this argument in the final paragraph of Division I above, and have stated our conclusion that the question of defendant's participation was properly submitted to the jury. We think Instruction No. 12 a correct and sufficient exposition of the governing rule of law.

III.   Although error is not assigned, it is argued briefly that there was reversible error in admitting certain testimony of Dean Coltrain, who with Warden committed the actual break-in. It concerns certain conversations between the witness and Warden when the defendant was not present. After the statement that Warden told him he needed $25, this appears:

"Q.  Did he say what he needed the $25 for?  A.   I don't remember for sure, but he said that he needed it to pay this other boy for casing it, as I remember."

Defendant's counsel then said: "Just a minute. I object to that and move to strike the question and answer." By the Court: "Overruled."

"Q.  What other boy?  A.  Smith, I believe was his name. Q.  Donald Smith?  A.  As I understand of this case it has been

Donald Smith. * * * Q. Has his name ever been mentioned to you? A. Don Warden has mentioned it once or twice. Q. In what connection was his name mentioned? A. Casing the place, as I remember it. Q. What place? A. This Shadle's Department store. Q. At Pleasantville? A. At Pleasantville, Iowa."

At this point defendant's counsel interjected: "I move to strike the question and the answer for the reason that it is incompetent, irrelevant and immaterial. There has been no proper foundation laid as to the time and place the conversation took place, and it is hearsay as to the defendant."

It will be observed that no objection was made to the first question set out until it had been answered. Under familiar rules a litigant may not speculate as to the answer and then for the first time lodge his objection. Nehring v. Smith, 243 Iowa 225, 232, 49 N.W.2d 831; Ducummon v. Johnson, 242 Iowa 488, 496, 47 N.W.2d 231. Then came a series of questions, to none of which objection was made, and finally after the question and answer: "Q. At Pleasantville? A. At Pleasantville, Iowa", another motion to strike. Here again the motion came too late. Generally also such a motion will be considered as pertaining only to the latest or immediately preceding answer. Nehring v. Smith, supra. We find nothing for our consideration here.

IV. Complaint is made of misconduct of the prosecuting attorney in argument. It is alleged that certain statements were made which were unfairly prejudicial to the defendant's cause. No record of the argument was made; and although objections to something said in the closing argument appear, we are left in the dark as to what was objected to, at the time. The only place in the entire record where these alleged statements are set out is in the defendant's unverified motion in arrest of judgment, for judgment notwithstanding verdict and for new trial. Objections to claimed improper conduct in argument must be made at the time. They are too late when raised for the first time in motion for new trial. State v. Rutledge, 243 Iowa 179, 199, 47 N.W.2d 251, and cases cited. It is true the record here shows objections, but we do not know whether they were to the statements of the county attorney now relied upon as error or to some other part of his argument. We doubt that

the record before us raises any question for our determination. In any event, the trial court had a considerable discretion in the matter, and we find no abuse. State v. Jensen, 245 Iowa 1363, 1367, 1368, 66 N.W.2d 480, and cases cited.

We have examined the entire record and find no error.— Affirmed.

All JUSTICES concur.