Argued January 24, decided January 30, 1912.

## GRACE v. McDOWELL.

[120 Pac. 413.]

BROKERS—COMMISSIONS FOR EXCHANGE—BASIS OF COMMISSION—VALUE OF PROPERTY RECEIVED.

1. If defendant agreed to pay plaintiff all money over $9,000 which defendant received for his land, from a purchaser procured by plaintiff, and to take suitable city property in payment thereof, the actual value of the city property received in exchange, and not the price placed thereon by defendant and the purchaser, should be taken in determining the amount of plaintiff's compensation.

EXCHANGE OF PROPERTY—SALE OR EXCHANGE.

2. If a price is fixed at which respective properties are to be exchanged, the transaction is a sale, but if no price is placed upon them, it is an exchange.

EVIDENCE—PAROL EVIDENCE—CONSIDERATION OF DEED.

3. As between the parties, the amount of the consideration expressed in a deed is only *prima facie* evidence of the consideration and the value of the property.

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by J. H. Grace against R. S. McDowell to recover $4,025 as compensation for the sale of land. The cause was tried before a jury, and a verdict rendered in favor of plaintiff. From a judgment thereon, defendant appeals.

According to the facts set forth in the complaint, plaintiff and defendant entered into an oral contract, some time during September, 1908, in Jackson County, Oregon, whereby it was agreed that if plaintiff would procure a purchaser willing to buy a certain 630 acres of defendant's land in that county, defendant would pay all sums of money which the buyer should pay defendant therefor, over and above the sum of $9,000. It was further agreed as a part of the transaction that defendant would accept in payment for said 630 acres suitable property in Los Angeles, California. Plaintiff accepted the employment and agreed to endeavor to secure a purchaser. In Novem-

Sig. 19

ber, 1908, plaintiff procured one Mary Fitz as purchaser for the tract of land, and thereupon defendant sold the tract to her for the sum of $13,100, and took in payment therefor certain Los Angeles property, which was then and there agreed upon between the said Mary Fitz and defendant to be worth the sum of $13,100, after deducting a mortgage thereon for $1,600. Defendant executed and delivered to Mary Fitz his deed of conveyance transferring said tract and reciting a consideration of $13,100, and accepted in payment therefor deeds of conveyance of said Los Angeles property executed and delivered to him.

Defendant by his answer as his first defense, admits that a contract was made, but denies that he agreed to accept in payment for the 630 acres, any Los Angeles property or anything except $9,000 in money. He alleges that about November 1, 1908, at Los Angeles, California, plaintiff and defendant entered into an agreement whereby it was agreed to abrogate the first contract. Under the new compact plaintiff agreed to try and procure one Mary Fitz to exchange certain property for said 630 acres of land. Defendant, in turn, agreed to pay plaintiff a reasonable value for such services. The defendant asserts that these services were performed pursuant to said last-mentioned agreement and not otherwise, and that the value for such was $500 and no more.

As a second separate defense, after admitting the matters contained in the first part of the answer, defendant denies that plaintiff produced a purchaser who was able and willing to pay defendant $13,100; or that it was agreed between defendant and Mrs. Fitz that the Los Angeles property, which he received for said 630 acres, was worth $13,100; or that the same should be taken as a payment of $13,100 upon the purchase price of said land. He alleges that plaintiff did procure said Mary Fitz to make an exchange of certain property owned by her, con-

sisting of several distinct parcels in Los Angeles, for said 630 acres, and that the exchange was made; but that no price or value was agreed upon by Mary Fitz or defendant, as the price or value of either the land conveyed by him or the property conveyed by Mrs. Fitz; and that said transaction was merely an exchange of the land of the defendant for the property of Mary Fitz, the consideration of each conveyance being the conveyance made by the other; that the whole value of the property conveyed to defendant was $10,600, subject to a mortgage of $1,600; and that the only consideration for the transfer of said 630 acres by him to Mary Fitz was $9,000 and no more.

In his reply plaintiff denies the allegation of the answer except as alleged in the complaint. Upon the trial, plaintiff testified substantiating the allegations of his complaint to the effect that the contract was made on the train in Jackson County, Oregon, in the presence of Mr. Dunning; that defendant plainly stated that he would take good Los Angeles or Santa Ana property in exchange for his tract, and said, "I will give you all over $9,000;" and, further, "there would nothing please me better than to write you a check for $3,000, if you get me $12,000 on the property, for you will need it." Plaintiff also testified that he produced a buyer for defendant's tract of land, one Mary Fitz, to whom defendant sold the property, for which he received in payment certain Los Angeles real estate acceptable to him. Plaintiff stated that he was present at their negotiations; that the parties went and looked at the properties, first visiting the Central Avenue property which was put in at $5,000, subject to a mortgage of $1,000, to which McDowell said: "That's all right;" that they next looked at the two-story house in which Mrs. Fitz lived, and the lot adjoining; that the same was put in at $5,000 clear, defendant saying,

"that's all right; that is good property, and the price is all right"; that they then went to Fifty-sixth Street where Mr. May and Victor Fitz had two places which were put in at $2,600, subject to a mortgage of $600, and adjoining that on the next lot, a four or five room cottage put in at $2,200, to all of which defendant said: "That's all right. I will accept all this property." Plaintiff further testified that he came to Oregon with Gilson Fitz, a son of Mrs. Fitz, and showed him the land; that further negotiations were had, and that after their return to Los Angeles the parties met and figured up the above-mentioned properties, not including a vacant lot examined on Fiftieth Street, and put the same in at the above-named figures aggregating $14,800, subject to mortgages of $1,600; that defendant said:

"Why, Mrs. Fitz, you are not asking a fancy price for your property, and I will not for mine. I will give you my property for yours."

Other witnesses testified tending to corroborate the testimony of the plaintiff in regard to the original agreement, and as to many of the details of the transaction. D. G. Fitz, witness for plaintiff, to the question: "Did Mr. McDowell at that time acquiesce in these prices that were fixed by you?" answered: "He did not object to any of them anyhow." On further examination this witness testified that the defendant offered to trade the land in Oregon for the Los Angeles property, if they would give a mortgage on the land in Oregon to offset the $1,600 mortgages. Mary D. Fitz, testifying for plaintiff, said that the latter brought the defendant and her together; that to the question, "Did you buy this 630 acres from Mr. McDowell?" she answered, "Why, I exchanged it, of course." And to the question, "What did you pay for it with?" answered: "I paid for it with our property in Los Angeles." On cross-examination, she said that the

properties in Los Angeles were accepted by defendant, and that it was agreed that the values above mentioned should attach to the same in the trade. Defendant McDowell testified in his own behalf as to the making of the contract with plaintiff in October, 1908, by which the latter was to receive for his services in making the sale all that he could get above $9,000 in cash. He stated that nothing was said in regard to an exchange; that when Mr. Grace afterwards presented the Fitz deal, he and the plaintiff went to see the different properties, together with Mr. Fitz, and that the latter told him what he asked for them, namely, the above-mentioned amounts; that after Mr. Fitz returned from Oregon the parties met and the contract was signed; that he never agreed to take any of the Los Angeles property at any particular price; and that the total market value of the same, which he received, was $10,600, subject to a mortgage of $1,600, making a net worth of $9,000.

The testimony of several real estate men in Los Angeles taken by deposition, was to the effect that the value of the Fitz property at that time was between $9,000 and $10,000. D. G. Fitz also stated in rebuttal that the prices named were the reasonable value of the California property.                                        REVERSED.

For appellant there was a brief over the names of *Messrs. Neff & Mealey* with an oral argument by *Mr. Porter J. Neff*.

For respondent there was a brief with an oral argument by *Mr. Gus Newberry*.

MR. JUSTICE BEAN delivered the opinion of the court.

It will be noticed from the pleadings that the plaintiff and defendant allege different contracts; one agreement differing from the other mainly as to the sale of the tract of land for cash only.

1. Counsel for defendant contend that the price agreed
upon between defendant and Mr. Fitz as the basis of the
exchange of the property is not conclusive upon the ques-
tion of the amount received by the defendant for the prop-
erty in fixing the compensation plaintiff should recover
for his services in obtaining a purchaser. The court was
requested to instruct the jury to determine, from all the
evidence in the case, the actual value of the real estate
received by defendant, and to give plaintiff the excess over
$9,000. The court refused to give such instruction and
defendant duly saved an exception. The court instructed
the jury as follows:

"If you should find for the plaintiff under the original
contract and find that it was agreed upon between the
defendant and the parties who were negotiating the prop-
erty that this property that was taken in exchange for
his property was taken for the sum of thirteen thousand
two hundred dollars, if you should find that that was the
agreement between the parties at that time, then the
plaintiff would be entitled to recover the difference
between the nine thousand and thirteen thousand two
hundred."

In the different instructions given by the court, the
jury were charged that they should take into consideration
the reasonable value of the Los Angeles property, only
in the event that they should find that the subsequent
contract was made as claimed by defendant. To all of
these instructions an exception was duly saved by defend-
ant. Testimony as to the value of the California prop-
erty was introduced by both parties without objection,
and defendant strongly contends that this feature of the
case should have been submitted to the jury. This is the
main question in the case. Plaintiff's counsel relies prin-
cipally upon the case of *Thornton* v. *Moody* (Tex. Civ.
App.) 24 S. W. 331. A careful examination of the latter
case discloses that it differs from the case at bar, mainly

in the fact that the defendant therein did not testify, and that no issue appears to have been raised as to the value of the property received by the seller; but that the value placed thereon was sanctioned as between the broker and the seller, and that the amount of the compensation claimed by the former was a fixed sum.

In *Fagan* v. *Hook,* 134 Iowa 381 (111 N. W. 981), an action to rescind a contract of exchange wherein it was claimed that an agreement had been made fixing the value of the properties exchanged, and that this agreement was binding upon the parties, the court makes use of the following language:

"Ordinarily, where the action is for the recovery of property, and its value has been agreed upon by the parties, the measure of damages is the *quantum* thus fixed. * * If, on the other hand, the agreement is a mere trading contract, by the terms of which one party is to exchange certain property belonging to him for that of the other upon or by the payment of the difference, and to this end and for the purpose solely of accomplishing this result, but not to ascertain their actual values, estimates are placed on the respective properties, then neither party is bound by the values so estimated, and the measure of damages to be applied is that of *quantum meruit.* In other words, the values designated in the agreement to be binding on the parties must appear to have been specified as such, and not as merely incidental to some other purpose not involving the intention of deciding the true worth."

2. In determining whether there has been a sale or exchange of property, the criterion is whether there is a fixed price at which the things are to be exchanged. If there is a fixed price, then the transaction is a sale; but if there is not the transaction is an exchange. Tiedeman, Sales, § 12.

*Boyd* v. *Watson,* 101 Iowa 214 (70 N. W. 120), was an action by a real estate dealer for his commission of five per cent on the purchase price of real property sold by him. Part of the purchase price was paid in town lots. It was held that the ·commission should be based upon the actual value of the lots shown by the evidence, and not upon the "nominal consideration" or "inflated trade value," and that this is the true rule. In the case at bar, the question of the value of the property conveyed to defendant McDowell by Messrs. and Mrs. Fitz, arises between one of these parties and a third, plaintiff Grace, who was not a party to the original contract and who was concerned therein only as a broker.

The pleadings raise the issue as to the value of this property and testimony upon this point was introduced at the trial. There was also evidence tending to show that the value of the respective properties was fixed solely for the purpose of facilitating the exchange, as a mere incident to the trade, and not with the intent to determine the real worth thereof. The actual value of the Los Angeles property is the correct basis for ascertaining the amount received by defendant in excess of $9,000.

3. As between the parties thereto, the amount expressed in the deed is only *prima facie* evidence of the value of the property, and may be rebutted. *Negus* v. *Simpson,* 99 Mass. 388. In such transactions it is but natural that each party should endeavor to slightly inflate the value of his property. If, in making the transfer referred to, McDowell and Mrs. Fitz had named the price of the real estate in Los Angeles at $8,000, we do not think that the plaintiff would have been bound thereby. Therefore we think that, under these circumstances, the defendant was entitled to have the question of the value of the California property received by him, submitted to the jury, and we think that there was error in this regard,

and that the substance of the instruction requested should have been given. As somewhat in point, see the case of *Caumisar* v. *Conley* (Ky.) 60 S. W. 375. The trial court in their instructions to the jury, in several instances, limited this inquiry by them to the price agreed to in making the exchange. Other errors are assigned; one among them being to the effect that the evidence of offers received by Mrs. Fitz for her property was not admissible to prove value, but as such are not likely to occur again after the case has been thoroughly examined by counsel, we do not deem a discussion thereof necessary.

For the reason above stated, it follows that the judgment of the lower court must be reversed and the cause remanded for a new trial, and it is so ordered.

REVERSED.