Argued December 5, 1923, modified January 29, rehearing denied
February 26, 1924.

# W. C. REPASS v. ESTACADA STATE BANK, INC.

(222 Pac. 581.)

**Exchange of Property—Transaction Held a "Sale" Within Contract Providing for Sale of Land and Division of Proceeds.**

1. The conveyance of a farm in consideration of grantee's conveyance of a lot with a store building and cottage thereon, and stock of merchandise contained in the store, *held* a sale within a contract between vendor and third party providing, for sale of the property and a division of the proceeds between vendor and third party, as against the contention that it was merely an exchange of land.

**Joint Adventures—Under Contract Providing for Acquisition of Property and Division of Proceeds, Party's Share Determined by Value Received and not by Inflated Value Placed on Property for Exchange Purposes.**

2. Where mortgagor and mortgagee entered into an agreement providing for the release of the mortgage, for the exchange of a sheriff's certificate of title held by the mortgagor for a certain piece of land to be conveyed to the mortgagee, for disposition of the land by mortgagee "for cash or its equivalent," and for a division of the proceeds after deducting mortgage indebtedness and expenses, the mortgagee was not required to sell the land for cash but could in good faith dispose of it for goods, in which case it was required to account to the mortgagor for his share of proceeds following conversion of such goods into money, and was not required to account to mortgagor for his share of the value placed on the land for the purpose of exchange though such value was inflated.

**Costs—Neither Party on Appeal Entitled to Costs Where Decree Modified.**

3. Where the contentions of both parties on appeal are wrong, and the decree is modified, neither party will be given costs.

From Clackamas: J. U. CAMPBELL, Judge.

Department 2.

This is a suit for an accounting in and about an agreement between plaintiff and defendant in respect

---

2. Mutual rights and liabilities of coadventurers, see notes in 17 Ann. Cas. 1022; Ann. Cas. 1912C, 202; Ann. Cas. 1914C, 691; Ann. Cas. 1916A, 1210.

to the purchase, management and sale of a tract of land called the Leaburg farm, and arises out of the following facts: In April, 1917, plaintiff was indebted to the bank in about the sum of $3,000, secured by a mortgage upon property of probably doubtful value in the town of Estacada. The mortgage was overdue and the defendant desired payment. At that time plaintiff had made some sort of an incompleted deal for the purchase of a sheriff's certificate of sale of lands in Eastern Washington, which, he stated to the bank, could be traded for the Leaburg farm by paying a balance of $2,745 for the sheriff's certificate. The result of the negotiations with the bank was the following agreement:

"This agreement, made and entered into this 5th day of April, A. D. 1917, by the Estacada State Bank, a corporation, of Estacada, Oregon, represented by LeRoy D. Walker, its president, party of the first part, and W. C. Repass of Portland, Oregon, party of the second part,

"Witnesseth: That, whereas the party of the first part now holds a note and mortgage in the sum of —— dollars against the said party of the second part, said mortgage covering property described as follows, to wit:

"All situated in the City of Estacada, County of Clackamas, State of Oregon, and that whereas, in consideration of one dollar ($1.00), and other valuable considerations, the said Estacada State Bank hereby agrees to release all of said mortgage against said lots, with the exception of —— dollars, to be left as a lien on said lots, to be paid at the time provided in said mortgage.

"And that, whereas the said Estacada State Bank has agreed to exchange a certain sheriff's certificate of title, held by said bank, on approximately 1900 acres of land near Davenport, Lincoln County, Washington, with one J. T. Alexander and Ada F. Alex-

ander, his wife, for 173½ acres of land at Leaburg, Oregon, hereinafter described as follows, to wit:

"Subject, however, to a now subsisting mortgage in the sum of $5,000, in favor of Bankers Mortgage Corporation of Portland.

"And it is also further agreed by and between the parties hereto that the said premises at Leaburg, Oregon, is to be deeded to the Estacada State Bank, subject to said mortgage, and that the said bank shall have full and complete title to said premises, subject only to said mortgage, and also that they (the said bank) shall have complete control, direction and management of said premises, and that the only claim that the said W. C. Repass has now, or may have in the future, can arise only by and through the following conditions, and it is hereby further agreed that, whereas the said Estacada State Bank has this day purchased said certificate of title, paying therefor the sum of $2,745; and in the event the said bank disposes of said premises at Leaburg, Oregon, for cash, or its equivalent, the said bank shall first deduct the now subsisting mortgage, together with accrued interest and all expenses incident thereto, then also in addition shall deduct from the proceeds of said sale the sum of $2,745 paid for said certificate of title by said bank, and whatever amount the overplus, if any, after making said deductions, the said W. C. Repass is to have credit toward the payment and lien transferred from the mortgage on the said lots at Estacada, Oregon, to whatever amount fifty per cent of the profits would be, after making the above-mentioned deductions, until amount due on said Repass mortgage on Estacada lots is fully paid and liquidated, together with interest; the said bank thereby receiving fifty per cent of all the proceeds of profit, after all said deductions have been made, and in the event after making said deductions and divisions, according to the above-mentioned basis of division, there remains any money due the said W. C. Repass after the said mortgage has been fully paid, together with interest, then the said W. C.

Repass is to have his part of credit from said proceeds divided equally, share and share alike, the proceeds from the sale of said premises.

"It is also agreed that no person or persons, corporation or corporations, shall have any control or direction in any way whatsoever in said premises, other than the said bank, and it only remains to be determined whether or not there is any money due or to become due the said W. C. Repass by reason of this agreement, only as may be determined from the proceeds of the sale of said premises as hereinbefore mentioned.

"In witness whereof, we, the parties of the first and second part, have hereunto set our hands and seals in duplicate, the day and year first written.

"ESTACADA STATE BANK, a Corporation.
"(Signed)    By LEROY D. WALKER,
"Its President.
"(Signed)    W. C. REPASS,
"(Signed)    J. T. ALEXANDER,
"(Signed)    ADA F. ALEXANDER,
"Witnesses."

The defendant entered into a subsidiary contract with one G. A. Cobb, whereby Cobb was to advance one half of the sum of $2,745 and to share equally with the defendant in its profits upon the contract made with the plaintiff; but the plaintiff never assented to the subcontract, and the weight of testimony is to the effect that he was not aware of it, although after his contract was made with the bank he was informed by Mr. Walker, the president of the bank, that Cobb would have the management of the business.

The trade was completed by the bank, resulting in the purchase of the Leaburg farm, which the bank continued to hold for a period of about a year, incurring and paying for sundry expenses connected with carrying it on, until it was finally traded by

the defendant for an acre lot in the town of Liberal, in Clackamas County, upon which was situated a store building containing a stock of general merchandise, and also a five-room cottage. The lot and buildings the owner, one W. J. E. Vick, estimated at a value of $5,000, subject to a mortgage of $1,100, which the bank assumed; making the net valuation of the land and buildings $3,900. The stock of goods and fixtures were put in at the invoice value of approximately $11,500, and a note for $683.50 was given for the chattels, etc., on the place, at prices agreed upon.

In the preliminary agreement the price of the Leaburg farm was fixed at $17,500, subject to a mortgage of $5,000, which Vick assumed; making it net to him $12,500. The chattels were put in at prices agreed upon, aggregating $683.50. An equity held by Cobb on property at Canby was put in at $1,000 and a note was given for $2,000, and upon this basis the trade was closed.

The principal contention on the part of plaintiff was that in the accounting defendant should be charged with the price fixed upon the farm by the defendant at the time of the trade as a basis for such accounting, and be held to have received $17,500 in "cash or its equivalent" for the farm. The contention of the defendant is that these prices were mere inflated estimates for trade purposes, and that the true basis is the actual cash equivalent realized from the transaction. The court adopted plaintiff's view, and made the following findings, which are not seriously questioned in other respects than that above mentioned:

"I.

"The court finds that on or about the 5th day of April, 1917, plaintiff and defendant entered into a

written contract regarding a certain tract of land near Leaburg, Oregon, said land being, in fact, a farm consisting of land, various stock and equipment, encumbered with a mortgage of $5,000, wherein, pursuant to said contract, the defendant took title to said land or farm, to hold in trust for plaintiff's benefit and as security for previous or old debts due defendant by plaintiff, to wit: The sum of $2,584.43; and also said contract provided further that the defendant should advance for plaintiff's benefit the further sum of $2,745 to perfect title by means of sheriff's certificate, accept said title, in its own name, to said property. Said contract further provided that defendant should have exclusive control and management of said property.

"II.

"The court finds that said contract further provided that in the event that defendant sold said property for cash or its equivalent, defendant should, before applying funds on old debt, make certain deductions from the proceeds received therefor, to wit: The sum of $2,745 paid for a certain sheriff's certificate (to which should be added the further sum of $4.36 accrued expenses, with $.24 interest thereon, by reason of transferring and recording title, procuring abstract, etc.), and thereafter deducting the said $5,000 mortgage with accrued interest on said mortgage and all expenses incident thereto. And in consideration of defendant's services and for the use of the funds advanced for said certificate. The then remaining balance, after said deductions, plaintiff and defendant should own jointly and divide equally. That is, one-half of said balance defendant should retain to itself for services and use of money advanced for said certificate and then account to plaintiff for the half balance. After which accounting defendant should further deduct the old account, said $2,584.43, with accrued interest, from plaintiff's said one-half and the portion of plaintiff's one-half thereafter remaining should be paid forthwith to plaintiff.

"III.

"The court further finds that defendant furnished said $2,745, with $4.36 additional for said sheriff's certificate, and took title to said property in its own name and had exclusive possession and control thereof and operated the same as a farm until February 26, 1918, at which time it disposed of the same to one W. J. E. Vick for $17,972. That plaintiff was at no time consulted or had a voice in said control or disposition.

"As to control: The court makes a special finding that defendant, while in possession and control of said property, operating same as a farm, expended for labor, seed, equipment, commissary, etc., $1,261.49, a part of which sum defendant and agents advanced and charged the undertaking with interest thereon, said charge being claimed by defendant as a proper expense in the premises. The interest on amounts and time claimed for advances being as follows:

"$200 from June 2, 1917, to February 16,
    1918, interest at 8% ................$ 11.70
"$300 from November 1, 1917, to February
    26, 1918, at 8% ..................... 7.65

          "Total cost of operation....$ 1,280.84

"During which time and from which operation defendant received as product from farm $518.24, making a loss of $762.84 in the operation of farm, which defendant charged as an expense against the estate.

"The court further finds that defendant paid:
"Taxes on same.........................$ 81.92
"Interest on $5,000 mortgage............. 396.77
"Paid to its attorneys and employees as at-
    torney fees and commission........... 50.00
"Commission on disposal of property (above
    referred to)......................... 393.55"

At the same time the court made the following conclusions of law:

"That the defendant should be, and is, charged with the sum of $17,972, and that an accounting

should be based upon said amount as of February 26, 1918, against which defendant should charge and be given credit for:

"(a) Sheriff's certificate (with accrued charge $4.60) ....................$2,749.60
"(b) Loss in operation of farm........... 762.84
"(c) Taxes ............................. 81.92
"(d) Mortgage ......................... 5,000.00
"(e) Mortgage interest .................. 396.77
"(f) Commission on disposition of farm... 393.55
"(g) Fees to its attorney................ 50.00

"Total deductions..........$9,434.44

"Leaving a net balance of $8,537.32, one-half of which, or $4,268.66, belongs to defendant for the use of its money furnished to purchase the sheriff's certificate and for its service as trustee.

"The other one-half of net balance, $4,268.66, belongs to plaintiff as his net interest in the trust property. Which sum, less $2,584.43 (with interest at 6% from April 6, 1917, to February 26, 1918, total $2,722.25), or $1,546.41, was due and payable to plaintiff February 26, 1918, for which sum plaintiff should have judgment against defendant, with interest from February 26, 1918, at 6% per annum, together with his costs and disbursements herein."

From a decree in accordance with these findings defendant appeals.

MODIFIED. REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. S. J. Graham* and *Mr. C. A. Marsch.*

For respondent there was a brief and oral argument by *Mr. W. D. Freeman.*

McBRIDE, C. J.—The evidence, taken as a whole, does not indicate that defendant received, in fact, $17,500, either in cash or its equivalent, for the prop-

erty in question. It is somewhere stated in the briefs that Vick valued his property in the trade at $20,000, or thereabouts, and that this valuation was accepted as the true value by defendant; but, taking the few scraps of testimony in the transcript together, we fail to find where there was any valuation suggested or accepted which would amount to more than $15,500 net. That defendant ever intended to give property of the actual value of $17,500 or $12,500 net, after deducting the mortgage thereon which Vick assumed, and in addition thereto add an equity of $1,000 in property owned by Cobb and as further addition a perfectly good note for $2,000, for property accepted and agreed to be worth only $15,500 plus Vick's promissory note for $683.50, would be to impute to the defendant absolute imbecility. That each party was inflating values for the purpose of driving a bargain is clear, whether we call the transaction a "sale," as contended by plaintiff, or an "exchange of properties" as contended by defendant.

1. The practice of exaggerating the value of one's own goods and depreciating that of the other party to a proposed trade is as old as trade itself. "It is naught, it is naught, saith the buyer; but when he has gone his way, then he boasteth." Proverbs, xx. 14. Or, as Mr. Bishop remarks (Bishop on Contracts, § 664) : "The law, departing from the rule in morals, tolerates a good deal of lying in trade, when in the nature of merely puffing one's own goods or depreciating those of another; * * ." While, in a general way, this transaction has many of the characteristics of an exchange of properties, or as a barter of lands, "with boot given," as remarked by DuRelle, J., in *Ross* v. *Barr's Exr.*, 21 Ky. Law Rep. 974 (53 S. W. 658), it must be held technically to have been a sale, under the definition given by this court in *Wind-*

*sor* v. *Collinson,* 32 Or. 297 (52 Pac. 26), which is supported by the weight of authority generally.

2. But it does not follow that because there was a technical sale the prices which the parties attached to their properties during the preliminary negotiations should be held to be the absolute value of the property conveyed as between the trustee and his *cestui que trust.* The agreement in this case is amply broad to authorize a disposal of the land in the manner that it was conveyed to Vick. Defendant was authorized to "dispose" of it for "cash or its equivalent." So long as defendant acted in good faith,—and it is expressly stated that no fraud is imputed to defendant,—it had a right to dispose of it either for cash or property. If defendant disposed of it for goods it must account for plaintiff's share in the value of the goods, and if, by inflating the value of the property, it succeeded in getting more goods in payment for the property than it otherwise would, thereby swelling the value of plaintiff's share, plaintiff ought not to be heard to say that defendant should account to him on the basis of such inflation. If anyone has a right to complain, it is Vick, and he has not complained. There is no competent evidence as to the value of the Leaburg farm, if indeed it had any real market value. Plaintiff says that he considered it worth $20,000, but he is an interested witness and gives no data as the basis of his estimate. It appears that this farm is situated somewhere on the McKenzie River, with somewhere from 18 to 50 acres of land in cultivation, which was actually cultivated by defendant and Cobb for one year at a net loss of $762; that defendant had made many efforts to sell it, without avail; that there was a $5,000 mortgage on the property, the interest on which was eat-

110 Or.—10

ing into its value each year, and that, in fact, everybody connected with it had a white elephant on his hands. Under the circumstances, the trade with Vick was a good one all around, and the fact that defendant, in order to effectuate it, put an inflated value on the property ought not to be used to make defendant pay more for the value of the land than it actually received.

Defendant's trust was not discharged when the conveyances were made. It could not make an accounting of the expenses it had incurred and pay plaintiff any share in the proceeds in dry-goods, or town lots, or buildings. It remained for it to turn these into their equivalent in money before accounting, and this seems to have been done; and this sum, and not the fictitious or inflated value made for the purposes of trade, is the amount which should be used as the basis of the accounting. This is the real doctrine enunciated in *Grace* v. *McDowell,* 60 Or. 577 (120 Pac. 413), and in *Boyd* v. *Watson,* 101 Iowa, 214 (70 N. W. 120).

On the basis here indicated, we are of the opinion that the statement of account rendered by the defendant, which indicates that the sum of $956.64 is the balance that should be credited to plaintiff as his share in the profits of the transaction, should be increased by adding thereto the sum of $393.55, charged as commission on the sale of the farm. There is nothing in the agreement between plaintiff and the bank that justified the bank in charging the commission. Cobb simply purchased a half interest in the contract made by the bank. He was a coadventurer, or pseudo-partner, with the bank in the deal, and his rights as between himself and plaintiff rose no higher than those of the bank. Adding this amount to the

$956.64 makes plaintiff's total credit $1,350.19, which amount should be deducted from the sum of $2,584.43 due from plaintiff to defendant on his note dated April 6, 1917. Defendant should be allowed interest on its note from its date until July 7, 1920, when this suit was commenced, at which date plaintiff should have a credit of $1,350.19, having the effect of a partial payment, which would leave at that date $1,699.45 due defendant from plaintiff, for which sum defendant should have a decree, with interest at 6 per cent from July 7, 1920.

3. As the contentions of both parties were partly wrong, the decree of the Circuit Court will be modified as above, and neither party will recover costs in either court.   MODIFIED.   REHEARING DENIED.

BEAN, BROWN and McCOURT, JJ., concur.